[No. D042631. Fourth Dist., Div. One. Jan. 25, 2005.]

MHC FINANCING LIMITED PARTNERSHIP TWO, Plaintiff and Respondent, v.
CITY OF SANTEE, Defendant and Appellant.

[No. D043129. Fourth Dist., Div. One. Jan. 25, 2005.]

MHC FINANCING LIMITED PARTNERSHIP TWO, Plaintiff and Appellant, v.
CITY OF SANTEE, Defendant and Respondent.

COUNSEL

Best, Best & Krieger, James Bell Gilpin and Melissa W. Woo for Defendant and Appellant and for Defendant and Respondent.

Bien & Summers, Elliot L. Bien; Hart, King & Coldren, Robert S. Coldren, C. William Dahlin and Robert G. Williamson, Jr., for Plaintiff and Respondent and for Plaintiff and Appellant.

OPINION

**AARON, J.**—Under Elections Code[1] section 9215, the city council of defendant City of Santee (the City) adopted without alteration a mobilehome rent control ordinance that was proposed by an initiative petition. However, it was later discovered that as a result of administrative mistake and inadvertence, there were differences between the text of the ordinance the City adopted (Ordinance 381) and that of the ordinance that was circulated with the initiative petition. The City eventually sought to cure the defects in the

---

[1] All further statutory references are to the Elections Code unless otherwise noted.

enactment of Ordinance 381 by enacting the correct version of the initiative-proposed ordinance (Ordinance 412) and making it retroactively effective to the effective date of Ordinance 381.

Plaintiff MHC Financing Limited Partnership Two (MHC), an owner and operator of a mobilehome park in the City, filed the instant action against the City seeking a judicial declaration that both Ordinance 381 and Ordinance 412 were null and void and raising other claims pertaining to the ordinances. The case was tried to the court without a jury and the court entered judgment in favor of MHC, declaring the ordinances void and enjoining the City from enforcing them. The court denied MHC's posttrial motion for attorney fees under Code of Civil Procedure section 1021.5 (the private attorney general statute) and Civil Code section 798.85, which authorizes an award of attorney fees and costs to the prevailing party in an action arising out of California's Mobilehome Residency Law (MRL). (Civ. Code, § 798 et seq.) The City appeals the judgment, and MHC appeals the denial of its motion for attorney fees.[2] The City's main contention is that the court erred by ruling it could not cure the defects in Ordinance 381 by enacting Ordinance 412. We agree with that contention and, accordingly, reverse that portion of the judgment. We affirm the order denying MHC's request for attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 1998, a member of a group of mobilehome owners calling themselves the Committee to Restore Fairness (CTRF) submitted to the city clerk written notice of intent to circulate an initiative petition. The notice was accompanied by the text of the initiative (the March 18 initiative), a proposed ordinance that would amend the City's existing mobilehome rent control ordinance. The notice included a request for preparation of a ballot title for, and summary of, the initiative "in accordance with the California Elections Code."[3] The city attorney prepared and provided the city clerk with the requested ballot title and summary as required by section 9203.

On April 2, 1998, another member of CTRF submitted a modified version of the initiative (the April 2 initiative) to the city clerk with a new notice of intent to circulate an initiative petition. The April 2 notice stated, "There has

---

[2] The appeals are consolidated for purposes of disposition.

[3] Section 9201 provides that "[a]ny proposed ordinance may be submitted to the legislative body of the city by a petition filed with the elections official of the legislative body . . . ." Section 9202 requires the proponents of an initiative to file the written text of the initiative and a notice of intention to circulate the initiative petition with the city elections official. Section 9203, subdivision (a) provides that upon proper request by any person interested in any proposed measure, the city attorney is required to prepare an impartial ballot title for and summary of the measure.

been a necessary typographical correction to the initiative as submitted to your office for a title and summary." However, the notice did not include an express request for a ballot title and summary, and the city attorney did not prepare a ballot title or summary for the April 2 initiative. The April 2 initiative petition was circulated under the ballot title and summary that had been prepared for the March 18 initiative.

In September 1998, CTRF submitted a number of completed sections of the April 2 initiative petition to the city clerk, who determined that the petition had been signed by more than 10 percent of the City's registered voters. The county registrar of voters confirmed the number of signatures. Upon receiving that confirmation, the city council was required under section 9215 to do one of the following: (1) adopt the proposed ordinance, without alteration, either at the regular meeting at which it was presented with certification of the petition, or within 10 days after presentation of certification; (2) submit the proposed ordinance to the voters; or (3) order a report on the effect of the proposed ordinance and, when presented with the report, either adopt the ordinance within 10 days or order an election. The city council chose the first option and, on October 28, 1998, enacted Ordinance 381, believing it to be the ordinance proposed by the April 2 initiative. However, due to administrative mistake and inadvertence, the text of Ordinance 381 was not that of the ordinance proposed by the April 2 initiative, but rather, was the text of the ordinance proposed by the uncirculated March 18 initiative.

Ordinance 381 became effective on November 27, 1998. On December 4, 1998, an association of mobilehome park owners known as the Santee Park Owners Association (SPOA) filed an action against the City in the federal district court in San Diego challenging the constitutionality of Ordinance 381. MHC was a member of SPOA at the time the federal action was filed. In mid-December, city employees, including the city clerk, became aware that there were discrepancies between the text of Ordinance 381 and the April 2 initiative. The city employees initially believed the discrepancies were the result of problems with the software that had been used to codify the ordinance. However, the City later discovered that the discrepancies were the result of the city council's inadvertent adoption of the March 18 initiative rather than the April 2 initiative.

In April 1999, while the federal action was pending, the City offered to cure or "reform" Ordinance 381 by adopting the version of the ordinance set forth in the April 2 initiative that had been circulated by petition. SPOA rejected the City's offer, asserting that the City could not lawfully reform Ordinance 381. SPOA's counsel stated: "The horse is out of the barn, and there is nothing the City can do to repair this situation. . . . The only option

the City has is to admit and declare that Ordinance 381 is not an initiative. Any action inconsistent with this will subject the City to further liability." In July 1999, the City filed a counterclaim for reformation and declaratory relief in the federal action, asking the court to reform Ordinance 381 to exactly match the language of the April 2 initiative or, in the alternative, to declare that the City had the power to reform the ordinance in that manner. In November 2000, the federal court dismissed the federal action on the grounds that SPOA had failed to state a federal takings (inverse condemnation) claim and that the court lacked subject matter jurisdiction over SPOA's ancillary state law claims.

In January 2001, the city council enacted Ordinance 412, entitled: "An Ordinance of the City Council of the City of Santee to Cure Error in the Adoption of Ordinance [No.] 381." The April 2 initiative was attached to Ordinance 412. Section 1 of the ordinance provides: "The text of Ordinance No. 381 is corrected to read exactly as in the initiative petition submitted and circulated by the Committee to Restore Fairness, without alteration. This correction is made effective as of the effective date of Ordinance No. 381. The text of Ordinance No. 381 is corrected to read as in the initiative which is as follows: [See attached initiative][.]" The City began enforcing Ordinance 412 on February 23, 2001.

In October 2001, MHC filed the instant action, pleading causes of action for denial of equal protection under the California Constitution, violation of the Elections Code, violation of the Brown Act, and illegal assessment in violation of California Constitution, article XIIID. In its complaint, MHC requested declaratory and injunctive relief based on these claims. On the City's motion for summary judgment or, in the alternative, summary adjudication of causes of action, the court summarily adjudicated in the City's favor the causes of action for denial of equal protection and violation of the Brown Act. The court found there were triable issues of fact as to the other causes of action.[4] At trial, the court granted MHC's request to file a second amended complaint adding two new causes of action—one alleging that a certain notice provision in Ordinance 412 is preempted by Civil Code section 798.17 (of the MRL) and the other alleging that "Ordinance Nos. 412/381's imposition of application fees and obligations to pay tenants' and/or homeowner association attorneys' fees and costs operate [*sic*] to deny [MHC's] right of petition [under article I, section 3 of the California Constitution] and renders Ordinance Nos. 412/381 unconstitutional."[5]

---

[4] The City's summary judgment/adjudication motion was directed to MHC's first amended complaint, which MHC filed after the court had sustained the City's demurrer to the original complaint with leave to amend as to the cause of action for violation of the Brown Act.

[5] This allegation demonstrates that MHC viewed Ordinances 381 and 412 as being essentially the same ordinance. In its motion in limine requesting leave to file a second

After the case was tried to the court on stipulated facts and the presentation of additional evidence, the court issued its final statement of decision and judgment. Under the heading "Decision" in that document, the court ruled that Ordinance 381 and Ordinance 412 were void because they were adopted in violation of the Elections Code. Under the heading "Judgment," the court declared both ordinances void, and permanently enjoined the City from enforcing either of them.

Addressing MHC's "request for damages based on the rent differential between [the rent control ordinance that preceded Ordinance 381] and Ordinance Nos. 381 and 412," the court awarded MHC the remedy of future rent increases in an undetermined amount. The court ruled: "The remedy of future rent increases, as opposed to an award of damages, will adequately compensate MHC. This remedy will place the cost of compensating MHC on those tenants who benefited from the invalid rent control ordinance. California courts have routinely fashioned remedies in the form of compensating those who have wrongfully benefited from an unconstitutional statute[6] or those who have been wrongfully damaged by an illegal charge." The court also awarded MHC damages of $4,316.00, representing the difference in the amount of a certain monthly assessment MHC would have been able to pass through to its tenants under the rent control ordinance that preceded Ordinance 381 and the lower pass-through amount allowed under Ordinances 381 and 412.

Although the court ruled that Ordinance 381 and Ordinance 412 were void based on the city's noncompliance with the Elections Code, the court addressed MHC's other challenges to the ordinances in the decision section of its final statement of decision and judgment. In that part, the court additionally decided (1) that the aforementioned monthly assessment required under Ordinances 381 and 412 does *not* violate article XIIID of the California Constitution; (2) that certain provisions in the ordinances were preempted by certain sections of the MRL; and (3) that certain assessment, cost and attorney fee provisions in the ordinances violated MHC's right under article I, section 3 of the California Constitution to petition the City for rent adjustments greater than the maximum allowed under the ordinances.

---

amended complaint, MHC stated that its new causes of action "allege that Ordinance Nos. 381/412 are preempted by the California Mobilehome Residency Law and that Ordinance Nos. 381/412 abridges [*sic*] MHC's right of petition under Article I, section 3 of the California Constitution." In the new preemption cause of action MHC alleged: "It is necessary and proper for the Court at this time to ascertain, determine and declare [MHC's] rights and duties and the rights and duties of [the City], and each of them as they pertain to Ordinance 412/318 [*sic*] and whether such Ordinance is preempted by state law."

[6] Presumably, the court either meant to say that California courts have fashioned remedies in the form of compensating those who have been wrongfully *harmed* by an unconstitutional statute, or that courts have fashioned remedies in the form of exacting disgorgement or restitution from those who have wrongfully benefited from an unconstitutional statute.

DISCUSSION

I. *The trial court erred in ruling that the city council could not cure the defects in Ordinance 381 by enacting Ordinance 412*

It is undisputed that under section 9215, the city council was required to adopt the April 2 initiative-proposed ordinance without alteration, and that the council failed to comply with that requirement by mistakenly enacting as Ordinance 381 the text of the March 18 initiative rather than the text of the April 2 initiative. The main issue in this appeal is whether the trial court erred in ruling that the city council was precluded from curing its mistake by enacting Ordinance 412 and making it retroactive to the effective date of Ordinance 381. We conclude the city council properly enacted Ordinance 412 and made it retroactively effective to cure the defects in Ordinance 381.

■ California courts have long protected the right of the citizenry under the California Constitution to directly initiate change through initiative, referendum and recall. (*Robins v. Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 907–908 [153 Cal.Rptr. 854, 592 P.2d 341].) "The initiative and referendum are not rights 'granted the people, but . . . power[s] reserved by them. Declaring it "the duty of the courts to jealously guard this right of the people" [citation], the courts have described the initiative and referendum as articulating "one of the most precious rights of our democratic process" [citation]. "[I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right not be improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it." ' [Citations.]" (*Rossi v. Brown* (1995) 9 Cal.4th 688, 695 [38 Cal.Rptr.2d 363, 889 P.2d 557].)

MHC relies on *Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531 [277 Cal.Rptr. 1, 802 P.2d 317] (*Lesher*) for the proposition that Ordinance 381 was void *ab initio*, and that Ordinance 412 could not operate retroactively to amend it. In *Lesher*, the court decided that an initiative measure that limited municipal growth was invalid at the time it was passed because the initiative was in the nature of a zoning ordinance and it did not satisfy the state law requirement that a zoning ordinance conform to the city's general plan. (*Lesher, supra*, at pp. 535, 544–545, 547.) Noting that "[a] void statute or ordinance cannot be given effect" (*id.* at p. 544), the *Lesher* court held: "An amendment to an invalid statute may itself constitute a valid enactment operative from its effective date [citations], but neither such amendment nor an amendment of the general plan revives an invalid zoning

ordinance. [Citations.]" (*Id.* at p. 545.)[7] Here, the court apparently relied on this language in *Lesher* in ruling: "Having found that Ordinance No. 381 was invalidly adopted and therefore void, Ordinance No. 412 cannot operate retroactively to amend a void ordinance."[8]

However, *Lesher* is inapposite. The initiative ordinance passed by the voters in *Lesher* was held to be inherently and incurably invalid because the electorate did not have the power under state law to enact it. Here, the electorate had the power to enact the initiative the city council intended to adopt. Ordinance 381 did not conflict with the city's general plan or with any other superseding law, and its invalidity did not otherwise inhere in its substantive provisions. Rather, Ordinance 381 was invalid only because the city council inadvertently adopted a somewhat altered version of the initiative that was circulated by petition, instead of an unaltered version as required under section 9215. While the invalidity of the zoning ordinance in *Lesher* was incurable because the electorate lacked the power to enact the ordinance, the invalidity of Ordinance 381 could be cured by simply replacing the ordinance with the correct, unaltered version of the petition initiative, which was properly put before the city council and which the city council was required to adopt under section 9215. Nothing in *Lesher* precluded the City from taking that curative measure.

A. *Expiration of the statutory period within which the city council was required to act on the April 2 initiative did not preclude the council from enacting Ordinance 412 to cure the defects in Ordinance 381*

MHC contends, and the court determined, that Ordinance 412 was invalid because the city council did not adopt the April 2 initiative attached to Ordinance 412 within 10 days after the initiative petition was presented to the council, as is required by section 9215, subdivision (a), nor did it timely

---

[7] The *Lesher* court did not explain why the invalid zoning measure could not be cured by subsequent amendment of the general plan. As authority for that conclusion, *Lesher* cited, by analogy, Government Code section 9611 and the application of that statute in *Corning Hospital Dist. v. Superior Court* (1962) 57 Cal.2d 488, 494 [20 Cal.Rptr. 621, 370 P.2d 325]. (*Lesher, supra,* 52 Cal.3d at p. 545.) Government Code section 9611 requires that any law temporarily modified be given the same force and effect upon expiration of the modification as if the temporary provision had not been enacted at all, providing that "whenever a provision of law is temporarily suspended, or is expressly or impliedly modified or repealed by a provision which is declared to be effective for only a limited period, the original provisions are not to be deemed repealed, but upon the expiration of the time of the temporary suspension or the effectiveness of the inconsistent provision, the original provision shall have the same force and effect as if the temporary provision had not been enacted." The relevance of Government Code section 9611 to a zoning ordinance that conflicts with a general plan is unclear.

[8] In the same paragraph, the court cited *Lesher* and section 9215 as authority for its ruling that the City's action on the April 2 initiative petition (enactment of Ordinance 412) two years after the petition was presented was void.

submit the initiative to the voters under section 9215, subdivision (b).[9] Citing section 9215 and *Lesher,* the court ruled that because the city council did not take either action on the initiative petition within the prescribed time periods, "it's [*sic*] action on the same initiative petition two years later is void." We conclude the periods prescribed by section 9215 did not preclude the City from retroactively enacting Ordinance 412 to cure its inadvertent noncompliance with section 9215.

■ *Native American Sacred Site & Environmental Protection Assn. v. City of San Juan Capistrano* (2004) 120 Cal.App.4th 961 [16 Cal.Rptr.3d 146] (*Native American*) supports the proposition that a city's failure to either adopt a qualified voter initiative or place it on the ballot within the statutory time periods does not preclude the city from exercising its ministerial[10] and mandatory duty to take such action. In *Native American,* the City of San Juan Capistrano was presented with an initiative petition that qualified for adoption by the city council or placement on the ballot under section 9214.[11] The city and city council (defendants) negotiated an implementation agreement "to mitigate certain conditions" and passed an ordinance that adopted both the initiative and the implementation agreement. The trial court granted a petition for writ of mandate filed by opponents of the initiative (plaintiffs) and ordered the defendants to set aside the ordinance on the ground that it violated section 9214 because the implementation agreement constituted an impermissible alteration of the initiative. (*Native American, supra,* 120 Cal.App.4th at p. 964.) The defendants set aside the ordinance and passed a new ordinance that adopted the unaltered initiative without the implementation agreement. (*Id.* at p. 965.)

■ Appealing from the denial of their petition for writ of mandate challenging the second ordinance, the plaintiffs in *Native American* contended, among other things, that the City ceased to have a ministerial duty to adopt the initiative under section 9214, subdivision (a), once the 10-day period prescribed by that subdivision had expired. Rejecting that contention,

---

[9] Section 9215, subdivision (b), gave the city council the option of submitting the initiative to the voters under section 1405, subdivision (b), which provides in relevant part: "The election for a municipal or district initiative that qualifies pursuant to Section 9215 . . . shall be held at the jurisdiction's next regular election occurring not less than 88 days after the date of the order of election."

[10] Black's Law Dictionary defines "ministerial" as "[o]f or relating to an act that involves obedience to instructions or laws instead of discretion, judgment, or skill . . . ." (Black's Law Dict. (8th ed. 2004) p. 1017, col. 1.)

[11] Section 9214 is substantially similar to section 9215, but applies to initiative petitions signed by not less than 15 percent of a city's voters whereas section 9215 applies to initiative petitions signed by not less than 10 percent of a city's voters. The wording of subdivision (a) of both statutes is identical, providing that a legislative body receiving a certified initiative petition may "[a]dopt the ordinance, without alteration, at the regular meeting at which the certification of the petition is presented, or within 10 days after it is presented."

the *Native American* court held that a city's statutory mandatory and ministerial duty to adopt a qualified voter initiative or place it on the ballot "remains, even where performance is beyond the statutory time frame." (*Native American, supra,* 120 Cal.App.4th at p. 966.) In support of this conclusion, the *Native American* court cited *Goodenough v. Superior Court* (1971) 18 Cal.App.3d 692 [96 Cal.Rptr. 165] (*Goodenough*), in which the Court of Appeal held that a city's failure to place a voter initiative on the ballot within the statutorily required time period was a " 'procedural detail [that would] not be permitted to defeat the clear purpose of the statute to bring initiative measures to an early vote.' [Citation.]" (*Native American, supra,* 120 Cal.App.4th at p. 966, quoting *Goodenough, supra,* 18 Cal.App.3d at pp. 696–697.) The *Native American* court also cited *Truman v. Royer* (1961) 189 Cal.App.2d 240 [11 Cal.Rptr. 159], in which the court "held that the ministerial act of correcting the certification of a referendum petition after the statutory 10-day period was 'deemed to relate back to the date of the original [timely] certificate. [Citation.] Therefore, time lapse between the two certifications is not fatal.' [Citation.]" The *Native American* court noted, "[H]ere, passage of the ordinance sans the implementation agreement corrected the original erroneous adoption of the altered initiative." (*Native American, supra,* 120 Cal.App.4th at p. 966.)

Rejecting the plaintiffs' analysis that the expiration of the statutory 10-day period to adopt the initiative invalidated the defendants' power to adopt the initiative, the *Native American* court concluded: "Considering the intent of the section and the broader statutory and constitutional scheme of which it is a part, that is an absurd result we cannot countenance. [Citation.] Rather, the only reasonable explanation for a 10-day period in which to adopt a voter-sponsored initiative is a speedy effectuation of the will of the people." (*Native American, supra,* 120 Cal.App.4th at p. 967.) Addressing the plaintiffs' claim that their appeal had nothing to do with the rights of the voters, the *Native American* court stated: "It has everything to do with those rights. More than 15 percent of the city's voters signed the initiative petition. They, on behalf of themselves and of the entire city population, are entitled to have their decision implemented under section 9214, which manifests the power of initiative reserved to the people under the Constitution." (*Native American, supra,* at p. 967.)

█ Similarly, the voters who signed the initiative petition here are entitled to have their decision implemented under section 9215, which, like section 9214, manifests the people's power of initiative under the California Constitution. We agree with the *Native American* court's analysis and conclusion that expiration of the statutory time frame within which a city council must either adopt, or set an election on, a qualified voter-sponsored initiative under section 9214 or 9215 does not extinguish the city council's mandatory and ministerial duty to do so. (*Native American, supra,* 120 Cal.App.4th at

p. 966.) The expiration of the statutory 10-day period to adopt the April 2 initiative did not preclude the city council from adopting the unaltered initiative to correct its earlier inadvertent enactment of an incorrect version of the initiative.

### B. *The adoption of Ordinance 412 retroactive to the effective date of Ordinance 381 was proper*

The City's retroactive enactment of Ordinance 412 was proper under the "doctrine of relation" (also referred to as the doctrine of relation back)—a doctrine explained and applied in *Willett v. Jordan* (1934) 1 Cal.2d 461 [35 P.2d 1025 (*Willett*). In *Willett*, the Secretary of State of California did not place a proposed initiative measure on the statewide general election ballot because on the last day allowed under the state Constitution for county clerks to certify signatures on the initiative petition, the petition was about 2,700 signatures short of the number required for placement on the ballot. However, four days later the county clerk of Alameda County discovered that a mistake had been made in checking the signatures on file in his office and that there were actually about 3,000 more qualified signatures than he had previously certified. The clerk sent the Secretary of State a second certificate amending his original certificate as of the date of the original to show the true status of the petitions filed in his office, but the Secretary of State refused to place the measure on the ballot on the ground that the amended certificate was untimely. The proponent of the initiative successfully petitioned the California Supreme Court for a writ of mandate compelling the Secretary of State to recognize the amended certificate and place the measure on the ballot. (*Willett, supra,* 1 Cal.2d at p. 463.)

The proponent invoked, and the Supreme Court applied, the doctrine of relation, " 'by which an act done at one time is considered, by a fiction of law, to have been done at some antecedent period.' " (*Peyton v. Desmond* (8th Cir. 1904) 129 F. 1, 11, quoting *Gibson v. Chouteau* (1871) 80 U.S. 92, 100–101 [20 L.Ed. 534].) The *Willett* court explained that the "doctrine is of both equitable and legal cognizance. [Citation.] It was promulgated for the purpose of promoting justice or preventing injustice and is applicable where several proceedings are essential to complete a particular transaction. [Citation.] When it is invoked the doctrine must be based on some antecedent lawful right [citation], and when there is otherwise no remedy. [Citations.] Although applied usually in private transactions, [it can also] be applied in an initiative proceeding . . . ." (*Willett, supra,* 1 Cal.2d at pp. 464–465.)

The *Willett* court decided that application of the doctrine of relation was proper because the proponents of the initiative had done everything required of them by law to have the measure placed on the ballot. They were not at

fault for the errors made by the county clerk, and no private rights would be prejudiced by application of the doctrine. The *Willett* court concluded: "To refuse [application of the doctrine] under the facts here disclosed would countenance a palpable injustice to those who, at great expense and effort, did all that was required of them by law and had established the antecedent right to have their petition recognized as sufficient. The correction of the admitted mistake of the public officer, the county clerk, and the amendment of the original certificates by him must therefore be deemed to date back to the time of the filing of the certificates originally filed in the office of the [Secretary of State]. When this is done[,] the duty of [the Secretary of State to put the measure on the ballot] is plain." (*Willett, supra,* 1 Cal.2d at pp. 464–465.)

Application of the doctrine of relation is equally proper here. The proponents of the initiative did everything required of them by law to have their proposed ordinance adopted by the city council or submitted to the voters under section 9215, and were not at fault for the City's errors that resulted in the city council's adoption of an incorrect version of the initiative. MHC has not articulated any private rights that would be prejudiced by application of the doctrine. Although MHC contends that *Willett* is "demonstrably inapposite here because of the intervening injury to MHC," MHC is not referring to injury caused by the enforcement of Ordinance 381 as opposed to Ordinance 412, but rather to its claimed injury resulting from the application of *either* Ordinance 381 or 412 as opposed to the pre-initiative ordinances.[12]

In supplemental briefing, MHC cites the rule that a statute will not be given retroactive operation unless the Legislature clearly and unequivocally intended that it operate retroactively. (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 840–841 [123 Cal.Rptr.2d 40, 50 P.3d 751] (*Myers*).) MHC argues that Ordinance 412 did not clearly and unequivocally convey that the city council intended it to apply retroactively. We disagree. As noted, section 1 of Ordinance 412 provides: "The text of Ordinance No. 381 is corrected to read exactly as in the initiative petition submitted and circulated by the Committee to Restore Fairness, without alteration. *This correction is made effective as of the effective date of Ordinance No. 381.*" (Italics added.) The italicized language conveys the city council's clear and unequivocal intent that Ordinance 412 apply retroactively to the effective date of Ordinance 381.

---

[12] MHC's main injury claim at trial was not for loss of rental income it would have realized if the City had properly enacted the unaltered initiative petition that was actually circulated instead of the earlier version it erroneously enacted as Ordinance 381. Rather, MHC's claim was for the rental income it would have realized under the ordinances the initiative ordinance was intended to replace. Under the prior ordinances, MHC was entitled to permissive rent increases of up to 100 percent of any increase in the relevant consumer price index. Under either Ordinance 381 or Ordinance 412, permissive rent increases were limited to 70 percent of increases in the same index.

MHC also argues that Ordinance 412 cannot be given retroactive operation because it would interfere with antecedent rights (*Myers, supra,* 28 Cal.4th at p. 840) or substantially change the legal consequences of past events (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507]). MHC maintains that because Ordinance 381 was void *ab initio,* there was either no mobilehome rent control ordinance in effect during the relevant period, or the rent control ordinances that Ordinance 381 was intended to replace remained in effect. In either case, MHC contends that retroactive application of Ordinance 412 would cause it to suffer adverse and onerous consequences in the form of lost rent receipts, with a resulting reduction in the value of its mobilehome park.

We reject MHC's argument that Ordinance 412 may not be applied retroactively. As MHC notes in its supplemental brief, the presumption against retroactive operation of legislative enactments is rooted in the constitutional principle that " '[i]n a free, dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions.' " (*Myers, supra,* 28 Cal.4th at p. 841, quoting *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 265–266 [128 L.Ed.2d 229, 114 S.Ct. 1483].) Between the effective date of Ordinance 381 and the City's enactment of Ordinance 412, the City did not enforce the preceding mobilehome rent control ordinances, and it did not abandon rent control altogether. Rather, the City enforced Ordinance 381. Accordingly, there is no conflict between the legal consequences of MHC's actions during that time period under retroactive application of Ordinance 412 and MHC's perception of those consequences during that period—except, as we will discuss *post,* to the extent those consequences may be adversely impacted by differences between Ordinance 412 and Ordinance 381.

As was the case in *Willett,* to refuse to apply the doctrine of relation here to give Ordinance 412 retroactive operation would "countenance a palpable injustice to those who, at great expense and effort, did all that was required of them by law and had established the antecedent right to have their petitions recognized as sufficient" (*Willett, supra,* 1 Cal.2d at p. 464), and, accordingly, to have their proposed ordinance adopted by the City. The city council properly made Ordinance 412 retroactively effective to the effective date of Ordinance 381.

### C. *The enactment of Ordinance 412 is not prohibited under section 9217*

The City contends the court erred by ruling that section 9217 precluded it from amending Ordinance 381 by enacting Ordinance 412. Section 9217

provides that "[n]o ordinance that is . . . proposed by initiative petition and adopted by the vote of the legislative body of the city without submission to the voters . . . shall be repealed or amended except by a vote of the people, unless provision is otherwise made in the original ordinance." The purpose of section 9217 is to protect the electorate's constitutional right to initiative by preventing successful initiatives from being undermined through amendment by hostile legislative bodies. (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 788 [38 Cal.Rptr.2d 699, 889 P.2d 1019].)

The court alluded to section 9217 in its statement of decision, stating that nothing in Ordinance 381 permitted the city council to amend it through the adoption of a subsequent ordinance. The court expressly cited section 9217 as authority for its ruling that "to the extent that Ordinance No. 412 adopted by the City for the purpose of 'curing error in 381' is a City created measure, it purports to amend the text of a voter initiative, albeit uncirculated, and is therefore void." MHC argues that because Ordinance 381 contained no provision allowing it to be amended by the city council, MHC was entitled to assume that it would, in MHC's words, "stand or fall on its own merit except through a duly scheduled election."

The city council did not violate section 9217 by enacting Ordinance 412 because Ordinance 412 did not amend an ordinance that was proposed by initiative and properly adopted under section 9215. Rather, Ordinance 412 cured the City's erroneous adoption of an ordinance that did not exactly match the language of the initiative-proposed ordinance, as required by section 9215. It is contradictory for MHC to argue on the one hand that section 9217 prohibited the city council from amending Ordinance 381 because the ordinance was proposed by an initiative petition, and to argue on the other hand that Ordinance 381 was invalid under section 9215 because it was not the ordinance proposed by the initiative petition. The city council's enactment of Ordinance 412 to accurately reflect the will of the electors who signed the initiative petition comported with, rather than violated, the provision of section 9217 prohibiting the city council from amending the voter-sponsored initiative ordinance, since it corrected the improper changes to the initiative that resulted from the inadvertent enactment of Ordinance 381.

D. *The ballot title and summary that circulated with the April 2 initiative petition accurately reflect the substance of the initiative*

 The City contends the court erred in ruling Ordinance 412 was invalid on the ground that a ballot title and summary was not prepared for the April 2 initiative. When, as here, there is no dispute about the format of an initiative petition presented to the city clerk, and the issue on appeal is whether the petition substantially complies with the ballot title and summary

requirements of section 9203, subdivision (b),[13] we review the matter de novo. (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 130 [133 Cal.Rptr.2d 249].)

■ "[T]echnical deficiencies in referendum and initiative petitions will not invalidate the petitions if they are in 'substantial compliance' with statutory and constitutional requirements. [Citation.] A paramount concern in determining whether a petition is valid despite an alleged defect is whether the purpose of the technical requirement is frustrated by the defective form of the petition." (*Assembly v. Deukmejian* (1982) 30 Cal.3d 638, 652 [180 Cal.Rptr. 297, 639 P.2d 939].) The purposes served by the ballot title and summary requirement of section 9203, subdivision (b), are: (1) to reduce the risk that voters were misled when signing the petition; (2) to allow verification that the signers had a neutral explanation of the proposed ordinance available to them when they signed; and (3) to prevent signatures from being submitted in support of a different measure than that for which they were procured. (*Alliance for a Better Downtown Millbrae v. Wade, supra,* 108 Cal.App.4th at pp. 130–131.)

Based on our own comparison of the ballot title and summary circulated with the April 2 initiative petition with the sections of the April 2 initiative addressed by the summary, we are satisfied that the title and summary accurately reflect the substance of the April 2 initiative and therefore did not frustrate the purposes of the title and summary requirement of section 9203. The differences between the full text of Ordinance 381 (the March 18 initiative) and full text of the April 2 initiative adopted as Ordinance 412 are sufficiently material to contravene section 9215, which requires that a qualified initiative be adopted "without alteration." However, they do not go to the heart of the circulated initiative, and thus do not render the ballot title and summary prepared for the uncirculated March 18 initiative misleading as to

---

[13] Section 9203, subdivision (b) provides: "The elections official shall furnish a copy of the ballot title and summary to the person filing the proposed measure. The person proposing the measure shall, prior to its circulation, place upon each section of the petition, above the text of the proposed measure and across the top of each page of the petition on which signatures are to appear, in roman boldface type not smaller than 12 point, the ballot title prepared by the city attorney. The text of the measure shall be printed in type not smaller than 8 point. [¶] The heading of the proposed measure shall be in substantially the following form: [¶] Initiative Measure to be Submitted Directly to the Voters.

"The city attorney has prepared the following title and summary of the chief purpose and points of the proposed measure: [¶] (Here set forth the title and summary prepared by the city attorney. This title and summary must also be printed across the top of each page of the petition whereon signatures are to appear.)"

the circulated April 2 initiative.[14] The court's final statement of decision and judgment includes a side-by-side comparison of the provisions of Ordinance 381 and the corresponding provisions of Ordinance 412 that the court determined were materially different from their Ordinance 381 counterparts. Of the six provisions specified by the court, only three are reflected in the summary that circulated with the April 2 initiative petition. The first is section 2.44.040(L)(b) of the ordinances, which in Ordinance 381 requires that the Manufactured Home Fair Practices Commission (the Commission) give notice of meetings to "representatives of the homeowners associations." In Ordinance 412, that provision is changed to require that the same notice be given to "representatives of the *resident* homeowners associations." (Italics added.) The ballot summary notes simply that the initiative "requires the Commission to give homeowners associations notice of Commission meetings." Although the change from "homeowners associations" to "*resident* homeowners associations" is sufficient to contravene section 9215, it is not a sufficient alteration to render the ballot summary not in substantial compliance with section 9203. The use of the term "homeowners associations" in the summary adequately apprised voters of the general notice requirement under section 2.44.040(L)(b) of Ordinance 412 and did not create a risk that voters signing the initiative petition were misled.

The second altered provision reflected in the ballot summary is section 2.44.080(B)(2) of the ordinances. In Ordinance 381, that provision requires that a space rent agreement be consented to by 67 percent of *homeowner* occupied rental spaces within a mobilehome park; the corresponding provision in Ordinance 412 requires the consent of 67 percent "of the occupied manufactured home rental spaces within the park . . . ." The ballot summary adequately reflects either provision by stating simply that "67% of the *qualified* voters must approve the proposed rent schedule."[15] (Italics added.)

The third altered provision specified by the court and addressed by the ballot summary is section 2.44.190(D) of the ordinances. In Ordinance 381, this provision allows a park *resident* to sublet a residence under certain conditions, while the corresponding provision in Ordinance 412 limits the right to sublet to "a *homeowner*." (Italics added.) The ballot summary reflects the sublease provision in Ordinance 412 more accurately than the corresponding provision in Ordinance 381, as it states the initiative "includes an express provision allowing *homeowners*[] to sublet under certain conditions."

---

[14] We note that in portions of the court's statement of decision not at issue in this appeal the court ruled on the validity of various provisions of "Ordinance Nos. 318/412," indicating the two ordinances are substantively the same.

[15] This statement in the ballot summary also applies to section 2.44.080(C)(5) of Ordinance 412, which requires the consent of "a manufactured homeowner from at least sixty-seven percent of the eligible spaces in the park" for a park rent schedule exemption (i.e., an agreement exempt from the ordinance's rent ceiling provisions).

■ Thus, while the initiative petition *technically* did not comply with section 9203 because the City Attorney did not prepare a ballot title and summary specifically for the April 2 initiative, the petition *substantially* complied with section 9203 because the ballot title and summary that circulated with it accurately reflected the substance of the accompanying April 2 initiative and did not create a risk that voters signing the petition would be misled about the substance of the initiative. The ballot summary's technical noncompliance with section 9203 did not infringe the electors' constitutional right of initiative.

II. *The rulings in the trial court's final statement of decision and judgment that are not challenged on appeal are part of the judgment and are binding*

A. *The scope of the judgment*

In the first two parts of the decision portion of the court's final statement of decision and judgment,[16] the court explained the basis for its determination that Ordinance 381 and Ordinance 412 were void.[17] Despite finding both ordinances void in their entirety, in sections 3 through 7 of the decision, the court addressed various challenges MHC made to particular sections common to both ordinances, and decided that various provisions either violated the California Constitution or were preempted by the MRL. We issued the following request for supplemental briefing regarding those rulings: "If this court were to determine that Ordinance No. 412 was properly adopted to correct the errors in the adoption of Ordinance 381, what would be the legal effect, if any, of the trial court's findings and rulings set forth in parts 3 through 7 of the 'Final Statement of Decision and Judgment'?"

Because none of the rulings in parts 3 through 7 of the court's decision were challenged on appeal, we were not seeking supplemental briefing regarding the correctness of those rulings, but rather on whether they should be viewed as part of the judgment despite not being set forth in the judgment part of the court's final statement of decision and judgment. The City argues in its supplemental brief that the portions of the ordinance the court found to be unconstitutional or preempted by the MRL are severable from the remainder of Ordinance 412 and that the remaining portions of the ordinance are valid and enforceable. MHC contends the court's ruling that certain attorney fee and assessment provisions of Ordinance 412 are unconstitutional

---

[16] As noted, the final statement of decision and judgment contains two major headings designated "Facts" and "Decision," respectively. The decision part contains 10 subheadings, the ninth and tenth of which are designated "Judgment" and "Damages," respectively.

[17] The court repeated its ruling that Ordinances 381 and 412 are void in the judgment section set forth in part 9 of the court's decision.

because they infringe MHC's right to petition the City for rent adjustments renders the entire ordinance void.

■ Significantly, the supplemental briefs of both parties reflect their common position that the rulings in parts 3 through 7 of the court's decision are part of the judgment. Although generally a statement of decision is not a judgment (see *Industrial Indemnity Co. v. City and County of San Francisco* (1990) 218 Cal.App.3d 999, 1003, fn. 3 [267 Cal.Rptr. 445]), under the circumstances of this case we agree with the parties' implied view that the judgment in this case includes the entire final statement of decision and judgment, and not just part 9 under the heading judgment. Code of Civil Procedure section 577 defines judgment as "the final determination of the rights of the parties in an action or proceeding." " 'It is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, . . . it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final . . . .' [Citations.]" (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698–699 [107 Cal.Rptr.2d 149, 23 P.3d 43].) Accordingly, "[a] memorandum of decision may be treated as an appealable order or judgment when it is signed and filed, and when it constitutes the trial judge's determination on the merits. [Citations.]" (*Estate of Lock* (1981) 122 Cal.App.3d 892, 896 [176 Cal.Rptr. 358].) Here, because the final statement of decision and judgment clearly sets forth the court's final determination on the merits of the various issues not challenged on appeal, we treat the entire document as the judgment.

B. *The portions of Ordinance 412 that the trial court determined were unconstitutional or preempted are severable*

The City contends that the court's rulings that certain provisions of Ordinance 412 are unconstitutional or are preempted by the MRL may be severed from the ordinance under the ordinance's severability clause and California law, and that the remainder of the ordinance is operative.[18] MHC contends that the court's ruling that the attorney fees and assessment provisions of Ordinance 412 unconstitutionally infringe MHC's right to petition the City for rent adjustments renders the entire ordinance void. We agree with the City.

---

[18] Ordinance 412's severability clause states: "If any provision or clause of this ordinance or the application thereof to any person or circumstance is held to be unconstitutional or to be otherwise invalid by any court of competent jurisdiction, such invalidity shall not affect other ordinance provisions or clauses or applications thereof which can be implemented without the invalid clause or provision, or application; and to this end the provisions and clauses of this ordinance are declared to be severable."

■ If an invalid provision of an initiative or ordinance is severable, it is stricken from the ordinance and the remaining provisions are given effect. (*Pala Band of Mission Indians v. Board of Supervisors* (1997) 54 Cal.App.4th 565, 585 [63 Cal.Rptr.2d 148]; *In re Portnoy* (1942) 21 Cal.2d 237, 242 [131 P.2d 1].) When the ordinance contains a severability clause, an invalid provision is severable if it is grammatically, functionally, and volitionally separable. (*Pala Band of Mission Indians, supra,* 54 Cal.App.4th at p. 586; *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 821 [258 Cal.Rptr. 161, 771 P.2d 1247].) "An enactment passes the grammatical test ' "where the language of the statute is mechanically severable, that is, where the valid and invalid parts can be separated by paragraph, sentence, clause, phrase, or even single words. [Citations.]." ' [Citation.]" (*People v. Library One, Inc.* (1991) 229 Cal.App.3d 973, 988 [280 Cal.Rptr. 400], italics omitted.) A provision is functionally severable if it is "capable of independent application. In order to pass this test '[t]he remaining provisions must stand on their own, unaided by the invalid provisions nor rendered vague by their absence nor inextricably connected to them by policy considerations.' [Citation.]" (*Id.* at p. 989; *Barlow v. Davis* (1999) 72 Cal.App.4th 1258, 1265–1266 [85 Cal.Rptr.2d 752].) The volitional requirement for severability is met if the voters likely would have adopted the initiative without the invalid provisions. (*Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d at p. 822; *Pala Band of Mission Indians, supra,* 54 Cal.App.4th at p. 586.)

We conclude each of the provisions the court found to be invalid is grammatically, functionally, and volitionally separable. In part 4 of the decision the court determined—and noted that the City conceded—that the notice required to be given under section 2.44.180 of "Ordinance Nos. 381/412" by park owners claiming an exemption under Civil Code section 798.17 (of the MRL) is preempted by that statute. Again noting the City's concession, in part 5 of the decision the court ruled that section 2.44.190 of "Ordinance Nos. 381/412," setting forth requirements for subletting mobilehomes, was preempted by Civil Code section 798.23.5, and that section 2.44190(O) of the ordinances, extending the applicability of Civil Code sections 798.17 and 798.18 to prospective purchasers of mobilehomes, was preempted by those two statutes.[19] In part 6 of the decision, the court ruled the following provisions in both ordinances were preempted by the MRL: Section 2.44.190(P), extending the provisions of the MRL to the provisions of the ordinance; the provision in section 2.44.190(B), subjecting persons who demand, accept or retain any payment in violation of the ordinance to treble damages; and section 2.44.190(K), providing for criminal penalties for violations of the ordinance. Each of these preempted provisions can be grammatically and functionally separated from Ordinance 412, and it

---

[19] Civil Code sections 798.17 and 798.18 address rental agreements between a "homeowner" and "management."

is unlikely their omission from the initiative would have affected the petition's success, as they do not go to the heart of the rent control initiative, and the matters they address are adequately covered by the MRL.

In part 7 of the decision, the court ruled that "[t]he assessment, cost and attorneys fees provisions contained in sections 2.44.070, 2.44.110 and 2.44.170 of Ordinance Nos. 381/412 operate to chill [MHC's] right to petition the City respecting its constitutional right to seek rent adjustments greater than the maximum allowed under those ordinances and, therefore, violate[] [MHC's] rights under article I, section 3 of the California Constitution." In the order in which the court addressed them in its statement of decision, the specific ordinance provisions the court found to be unconstitutional are ordinance sections 2.44.170(F)(2), 2.44.110(F), and 2.44.070(A)(2), (B)(2) and (C)(2).[20]

Section 2.44.170(F)(2) of Ordinance 412 requires a park owner applying for a rent adjustment to pay an application fee. It is grammatically and functionally severable and it is unlikely that omission of the requirement of an application fee from the ordinance would have significantly affected voter support for the initiative proposing the ordinance.

Section 2.44.110(F) of Ordinance 412 provides that if a park owner unsuccessfully applies for a rent adjustment under certain provisions of the ordinance and is not awarded a rent increase in excess of the increase to which the owner is entitled under other adjustment provisions of the ordinance, the owner will be required to pay reasonable attorney fees and costs incurred by homeowners or by the homeowners' association in opposing the park owner's application. This provision is also grammatically and functionally severable, and it is tangential to Ordinance 412's main provisions reducing allowable rent increases by park owners. Accordingly, there is no reason to view it as critical to the success of the initiative petition proposing the ordinance. Similarly, the provisions concerning the $2.00 legal defense assessment in section 2.44.070(A)(2), (B)(2) and (C)(2) of Ordinance 412 are grammatically and functionally severable from section 2.44.070 of the ordinance, and are volitionally severable because it is unlikely the success of the initiative petition turned on their presence in the proposed ordinance.

MHC cites *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129 [130 Cal.Rptr. 465, 550 P.2d 1001] (*Birkenfield*) for the proposition that any rent

---

[20] Although the court did not cite particular subdivisions of section 2.44.070, it is clear from its ruling, including its determination that the $3.00 administrative assessment imposed by section 2.44.070 was *not* unconstitutional, that it found section 2.44.070's imposition of a monthly $2.00 assessment fee on park owners for legal defense of the ordinance to be unconstitutional. Subdivisions (A)(2), (B)(2) and (C)(2) of section 2.44.070 concern the $2.00 legal defense assessment.

control law that fails to provide a fair and adequate procedure for obtaining discretionary rent increases is facially unconstitutional. Noting that the trial court cited *Birkenfield* in ruling that the assessment, cost and attorney fees provisions in sections 2.44.070, 2.44.110 and 2.44.170 of Ordinances 412 and 381 were unconstitutional, MHC contends "the legal effect of the trial court's *Birkenfield* holding is to render Ordinance 412 (and 381) unenforceable for facial unconstitutionality."[21]

*Birkenfield* is inapposite. *Birkenfield* was a class action brought by Berkeley landlords challenging an initiative-adopted amendment to the city charter that imposed residential rent control. The *Birkenfield* court concluded the charter amendment was unconstitutional because the rent adjustment procedure it created "drastically and unnecessarily" restricted the rent control board's power to adjust maximum rents without unreasonable delay, "making inevitable the arbitrary imposition of unreasonably low rent ceilings." (*Birkenfield, supra,* 17 Cal.3d at p. 169.)[22] The overall rent adjustment procedure in *Birkenfield* was so riddled with defects that it "inherently and unnecessarily [precluded] reasonably prompt action [on a rent adjustment application] except perhaps for a lucky few." (*Id.* at p. 172.) The *Birkenfield* court determined that the invalid limitations on the rent control board's powers to adjust maximum rents could not be severed from the remainder of the charter amendment, stating: "The constitutional defect cannot be cured simply by excision but only by additional provisions that are beyond our power to provide." (*Id.* at p. 173.)

---

[21] The court cited *Birkenfield, supra,* 17 Cal.3d at pages 167–169, for the principle that "[rent control] ordinances are valid only if they set forth reasonable procedures for rent review and adjustments that are based on legitimate factors and reasonable government interests." The court ruled: "Ordinance Nos. 381/412 set forth a rent increase application process but impermissibly restrict and chill mobilehome park owners' exercise of their rights to utilize the process by imposing payment of attorneys fees and penalties."

[22] The *Birkenfield* court summarized the effects of the charter amendment: "[The charter amendment's rent adjustment] provisions put the [Rent Control] Board in a procedural strait jacket. It cannot order general rental adjustments for all or any class of rental units based on generally applicable factors such as property taxes. It cannot terminate controls over any housing. It cannot consider a landlord's petition that is not accompanied by a current building inspection certificate of code compliance. It cannot dispense with a full-blown hearing on each adjustment petition even though all nonpetitioning parties are given ample notice and none requests to be heard. It cannot accept petitions pertaining to more than one unit or consolidate petitions pertaining to individual units for hearing even in the absence of objection except when the majority of the tenants in a building give written consent to consolidation of the petitions relating to that building. It cannot delegate the holding of hearings to a hearing officer or a member of the Board. In short, it is denied the means of reducing its job to manageable proportions through the formulation and application of general rules, the appropriate delegation of responsibility, and the focusing of the adjudicative process upon issues which cannot fairly be resolved in any other way." (*Birkenfield, supra,* 17 Cal.3d at p. 171, fns. omitted.)

██ Thus, *Birkenfield* supports the proposition that a rent control ordinance is facially unconstitutional if it does not provide a fair and adequate procedure for obtaining discretionary rent increases, and the defects in the procedure cannot be cured by severing invalid provisions from the ordinance, but only by adding curative provisions to the ordinance. Here, the trial court did not find that the overall rent adjustment procedure set forth in Ordinance 412 was inherently unfair or unconstitutional; the court simply found that specific assessment, cost and attorney fees provisions relating to the rent adjustment procedure violated MHC's right of petition under article I, section 3 of the California Constitution. As discussed above, these offending provisions can be severed from Ordinance 412 without impairing the ordinance's key rent control and rent adjustment application provisions. They do not render Ordinance 412 entirely invalid. However, the matter should be remanded for the trial court to determine whether MHC suffered any legally remediable injury as a result of enforcement of any of the provisions in Ordinances 381 and 412 that the court found to be unconstitutional and, if so, the proper remedy for such injury.

III. *The impact on MHC of Ordinance 412 versus Ordinance 381*

Between the effective date of Ordinance 381 and the enactment of Ordinance 412, the operative ordinance enforced by the City was Ordinance 381. We requested supplemental briefing on the differences, if any, in the impact of Ordinance 381 and the impact of Ordinance 412 on MHC. Our concern is whether the retroactive application of Ordinance 412 to the effective date of Ordinance 381 interferes with antecedent rights MHC enjoyed under Ordinance 381.

MHC claims that Ordinance 412 is significantly more onerous than Ordinance 381 in several respects.[23] We conclude that whether any differences between Ordinance 381 and Ordinance 412 caused MHC to suffer remediable harm, as a result of the City's enforcement of Ordinance 381 rather than Ordinance 412 prior to the enactment of Ordinance 412, is a factual issue, and thus is not properly decided by this court. Accordingly, we will remand the case for the trial court to determine whether MHC suffered any legally remediable injury as a result of the retroactive application of Ordinance 412 to the effective date of Ordinance 381 and, if so, the proper remedy.

---

[23] However, MHC's briefing both here and in the trial court, and the trial court's statement of decision, strongly indicate that the harm MHC claims to have suffered is largely attributable to the differences between what the court repeatedly referred to as "Ordinance Nos. 381/412" and the rent control ordinances that were in effect before the City adopted Ordinance 381.

IV. *MHC is not entitled to attorney fees under either Code of Civil Procedure section 1021.5 or Civil Code section 798.85*

Our reversal of the portion of the judgment declaring Ordinance 412 void and enjoining its enforcement renders MHC's appeal from the order denying its motion for attorney fees under Code of Civil Procedure section 1021.5 and its motion for judicial notice of the City's demographics moot. In any event, we find no abuse of discretion in the court's denial of private attorney general fees to MHC. We agree with the trial court's suggestion that the outcome of the trial of MHC's lawsuit benefited MHC, and did not benefit a large class of persons or the general public.[24] The City's enactment of Ordinance 412 to accurately reflect the will of the electors who signed the initiative petition protected, rather than infringed, the electorate's constitutional right to initiative; MHC's bid to invalidate Ordinance 412 had the opposite effect.

MHC also sought attorney fees under Civil Code section 798.85, which provides: "In any action arising out of the provisions of this chapter the prevailing party shall be entitled to reasonable attorney's fees and costs. A party shall be deemed a prevailing party for the purposes of this section if the judgment is rendered in his or her favor or where the litigation is dismissed in his or her favor prior to or during the trial, unless the parties otherwise agree in the settlement or compromise." MHC contends it is entitled to attorney fees under that statute because it prevailed on its MRL preemption claims, and those claims arose under the MRL.

"An order granting or denying an award of attorney fees is generally reviewed under an abuse of discretion standard of review; however, the 'determination of whether the criteria for an award of attorney fees and costs have been met is a question of law.' [Citations.]" (*Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 669 [17 Cal.Rptr.3d 427].) Accordingly, MHC's entitlement to attorney fees under Civil Code section 798.85 is a question of law subject to de novo review.

Asserting that the phrase "arising out of" in Civil Code section 798.85 is the broadest connective phrase in California jurisprudence, MHC's position is essentially that its MRL preemption claims "arise out of" the MRL within the meaning of Civil Code section 798.85 because they *relate to* the MRL. We construe the phrase "arising out of " more narrowly and conclude that MHC's preemption claims do not "arise out of" the MRL within the meaning of Civil Code section 798.85.

The fact that a declaratory relief cause of action *relates to* a particular statute or statutory scheme does not necessarily mean that the cause

---

[24] The court's ruling on MHC's attorney fees motion stated: "[Here] the benefits obtained seem to accrue more to MHC than a large class of persons or the general public."

of action *arises out of* the statute or scheme. For example, in *Patel v. Athow* (1973) 34 Cal.App.3d 727, 731–732 [110 Cal.Rptr. 460], the court decided that the federal courts' statutory exclusive jurisdiction over cases arising under the Economic Stabilization Act of 1970 did not extend to a cause of action seeking a declaratory ruling on the applicability of regulations issued under that act to the parties' lease agreement. More generally, subject matter jurisdiction of the federal courts over cases and controversies *arising under* federal law does not extend to claims for declaratory relief involving a federal question where, but for the availability of the statutory declaratory judgment procedure, the claim would arise only as a defense to a cause of action brought by the declaratory defendant under state law. (*Franchise Tax Bd. v. Construction Laborers Vacation Trust* (1983) 463 U.S. 1, 16–19 [77 L.Ed.2d 420, 103 S.Ct. 2841] [federal court lacked subject matter jurisdiction over state court action in which plaintiff sought a declaratory ruling on the validity of anticipated federal preemption defense].)

In various contexts, courts have construed the phrases "arising out of" and "arising under" more narrowly than the phrase "relating to." Louisiana courts have held that the state's Office of Workers' Compensation has exclusive subject matter jurisdiction over matters that arise out of the state's Workers' Compensation Act, but not over issues that merely *relate to* workers' compensation. (*Ellender's Portable Building, Inc. v. Cormier* (La. 2001) 787 So.2d 601, 603.) The Ninth Circuit Court of Appeals held that an arbitration clause covering disputes "arising under" or "arising out of" an agreement is narrower in scope than one covering disputes " 'arising out of *or relating to*' " the agreement. (*Tracer Research Corp. v. National Environmental Services Company* (9th Cir. 1994) 42 F.3d 1292, 1295; accord, *Pennzoil Exploration and Production Company v. Ramco Energy Limited* (5th Cir. 1998) 139 F.3d 1061, 1067.) Under Ninth Circuit case law, an arbitration clause covering disputes "arising out" of an agreement but omitting reference to claims "relating to" the agreement covers only those disputes concerning the interpretation and performance of the contract itself. (*Tracer Research Corp. v. National Environmental Services Company, supra*, 42 F.3d at p. 1295.)

We conclude that the phrase "any action arising out of the provisions of [the MRL]" in Civil Code section 798.85 encompasses only those actions directly involving the application of MRL provisions in specific factual contexts addressed by the MRL, such as actions by mobilehome park residents against management for failing to maintain physical improvements in common facilities in good working order. (See Civ. Code, §§ 798.84–798.88.) Although MHC's declaratory relief claims—that the MRL preempts certain provisions of Ordinance 412—*relate* to the MRL, they do not *arise out of* the MRL because they do not involve application of MRL provisions to a particular factual context addressed by the MRL. The court

did not abuse its discretion in denying MHC's requests for attorney fees under Civil Code section 798.85.

## DISPOSITION

The portions of the judgment declaring Ordinance 412 void, enjoining the City from enforcing Ordinance 412, and awarding MHC the remedy of future rent increases and damages in the amount of $4,316 are reversed. The judgment is otherwise affirmed. The order denying MHC's motion for attorney fees is affirmed. The matter is remanded for further proceedings to determine (1) whether MHC suffered any legally remediable injury as a result of any differences between Ordinance 412 and Ordinance 381 and the retroactive application of Ordinance 412 to the effective date of Ordinance 381; (2) whether MHC suffered any legally remediable injury as a result of enforcement of any of the provisions in Ordinances 381 and 412 that the court found to be unconstitutional; and (3) the proper remedy for any such injury. The City is awarded its costs on appeal.

Haller, Acting P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied February 16, 2005, and the opinion was modified to read as printed above. The petition of respondent MHC Financing Limited Partnership Two for review by the Supreme Court was denied May 11, 2005.