Filed 2/13/14  Wilson v. Howard CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SUZANNE V. WILSON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>DON HOWARD et al.,<br><br>        Defendants and Respondents. | A136847<br><br>(Mendocino County<br>Super. Ct. No. SCTM CVG 08-52731) |

Plaintiff Suzanne Wilson bought a dwelling, which we will refer to as the "Park Model," from defendant Don Howard.[1]  The Park Model occupied a space in a mobilehome park, Point Cabrillo Highlands, owned by defendant Point Cabrillo Highlands Development Corporation, Inc. (PCHDC).  Wilson brought this action after Mendocino County ordered PCHDC to remove the Park Model from its space because of various permitting problems.  The trial court denied Wilson's motion for summary adjudication on her two causes of action under the Manufactured Housing Act of 1980 (MHA)[2] after concluding that the Park Model is neither a "manufactured home" nor a "mobilehome" as defined in that statute.  A jury trial was held on two of Wilson's other causes of action—for fraud and abuse of process—and the court entered judgment on

---

[1] Whether the Park Model should be classified under the applicable statutes as a "manufactured home," a "mobilehome," a "recreational vehicle," a "park trailer," or some combination of these was a central issue litigated by the parties below.

[2] Health and Safety Code section 18000 et sequitur.  All further statutory references are to the Health and Safety Code unless otherwise noted.

1

these claims in defendants' favor.  The court also awarded defendants costs and attorney fees under the Mobilehome Residency Law (MRL).[3]

On appeal, Wilson argues that the trial court erred in holding that the Park Model is not a manufactured home, denying her motion to reopen her case, and awarding costs and attorney fees to defendants but not to her.  We are not persuaded and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In July 2007, Wilson purchased the Park Model from Howard, the president of PCHDC, and began renting the space it occupied in Point Cabrillo Highlands.  Several months later, Wilson was told that the space "was not properly permitted."  If true, this could pose, in the trial court's words, "a big problem for a consumer of the type of housing unit purchased by [Wilson].  While a Park Model is transportable, it is costly and inconvenient to move them.  Moreover, a significant portion of the value of the unit is linked to the location where it is placed and the expectation that it will remain there for the long term."

In December 2007, Mendocino County issued an abatement order to PCHDC requiring the Park Model to be relocated within 60 days, either to one of the "existing RV sites" within Point Cabrillo Highlands or to another legal location outside the park. PCHDC appealed the order, but the record does not disclose whether or how the appeal was resolved.  The following July, defendants sent Wilson a notice that her tenancy was terminated effective September 1, claiming that her behavior was "a substantial annoyance to individuals and disruptive to those living and/or working at the [p]ark." Wilson subsequently moved out of the Park Model, but she did not immediately remove it from Point Cabrillo Highlands.  There is no indication in the record that defendants forced Wilson to move out in order to comply with the abatement order.

Defendants then notified Wilson of their intent to auction the Park Model as abandoned personal property under Civil Code section 1988, and Wilson brought this suit

---

[3] Civil Code section 798 et sequitur.

2

to prevent them from proceeding with the auction and to obtain other relief. She soon obtained a preliminary injunction preventing defendants from auctioning the Park Model, and she then removed it from Point Cabrillo Highlands. Continuing to prosecute the case, she filed a first amended complaint alleging seven causes of action: (1) alter ego; (2) injunctive relief; (3) abuse of process; (4) fraud by concealment; (5) reduction of services under the MRL; (6) improper escrow under the MHA; and (7) failure to deliver disclosures under the MHA.

Wilson moved for summary adjudication of four of these claims, but the motion was denied. It was denied as to the two claims brought under the MHA because the trial court concluded that the Park Model was a " '[r]ecreational vehicle' " but not a "manufactured home" or a "mobilehome" within the meaning of the statute. (§§ 18007, 18008, 18010.) The motion was denied as to the claim for reduction of services under the MRL and as to the claim for abuse of process because the court found that both claims presented disputed issues of material fact.

Before trial, Wilson abandoned her claim for reduction of services under the MRL. Two of the remaining claims—for fraud and abuse of process—were tried to a jury. After Wilson rested, the trial court granted nonsuit in favor of both defendants on the fraud cause of action because Wilson had failed to prove that defendants knew about any permitting problems when Howard sold the Park Model to her. The court also granted nonsuit in favor of Howard, but not PCHDC, on the cause of action for abuse of process.

Wilson later moved to reopen her case to present the testimony of a retired building inspector, James McCleary, who she claimed would prove that defendants were aware of permitting problems before she purchased the Park Model. The trial court denied the motion, as well as Wilson's later request to reconsider this ruling.

At the end of trial, the trial court granted a directed verdict in favor of PCHDC on the abuse-of-process claim. The court then entered final judgment in defendants' favor on the fraud and abuse-of-process causes of action. It also granted defendants' motion for costs and attorney fees under the MRL and denied Wilson's cross-motion for the same. Wilson timely appealed.

## II.
### DISCUSSION

*A.     The Judgment Entered After Trial Is Amended to Render It Final.*

We first consider whether the judgment entered after trial was final and, thus, appealable.  The judgment disposed of the fraud and abuse-of-process claims, and then stated that "[a]ll other causes of action in Plaintiff's First Amended Complaint were resolved in favor of Defendants by summary judgment prior to trial."  But the record reflects that this statement is inaccurate because the other causes of action were not disposed of when summary adjudication was considered.  The alter-ego and injunctive-relief claims were not part of Wilson's motion for summary adjudication.  The reduction-of-services claim was part of the motion for summary adjudication, but summary adjudication of it was denied because the court concluded that it involved a disputed issue of material fact.  The two claims under the MHA were also part of the motion for summary adjudication, and the court concluded that they failed as a matter of law.  But *defendants* never moved for summary adjudication of those claims, and the order denying summary adjudication did not enter final judgment on them.  As a result, the judgment entered after trial was not final because it "dispose[d] of fewer than all the causes of action framed by the complaint."  (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 307.)

This conclusion, however, does not end our analysis.  "An appeal from a judgment that is not final violates the one final judgment rule and must therefore be dismissed [citations], unless the violation can be cured by amending the judgment."  (*Sullivan v. Delta Air Lines, Inc.*, *supra*, 15 Cal.4th at pp. 307-308.)  In particular, "[w]hen 'the trial court's failure to dispose of all causes of action results from inadvertence or mistake rather than an intention to retain the remaining causes of action for trial' [citation], the appellate court has discretion to 'preserve the appeal by amending the judgment to reflect the manifest intent of the trial court' [citations]."  (*Id.* at p. 308.)

This principle permits us to amend the judgment under the circumstances presented here.  The two MHA claims were not tried because the trial court's order

4

denying summary adjudication of them effectively disposed of them as a matter of law. And, as Wilson concedes, the injunctive-relief claim became moot after she removed the Park Model from the mobilehome park, and the reduction-in-services claim was abandoned before trial. Finally, given the resolution of all the other claims in defendants' favor, the cause of action for alter ego provided no possible remedy because the claim "is a procedural device," not "a claim for substantive relief." (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 418-419.) We conclude that the trial court clearly intended to dispose of all of Wilson's causes of action in defendants' favor. Therefore, we amend the judgment to reflect this intention, rendering it final and appealable.

**B.** *Wilson's MHA and Fraud Claims Need Not Be Reinstated Even if the Park Model Is Also a "Manufactured Home."*

Wilson concedes that the Park Model is a "recreational vehicle" within the meaning of the MHA, but she argues that the trial court erred in ruling that the Park Model was not *also* a "manufactured home" under that statute and that the causes of action for fraud, improper escrow, and failure to provide disclosures therefore should not have been resolved against her. We are not persuaded.

We begin by rejecting defendants' argument that Wilson cannot challenge the trial court's resolution of the MHA claims because she failed to appeal from the order denying summary adjudication. An order denying summary adjudication is not appealable, but it may be reviewed on appeal from the final judgment. (*Cale v. Transamerica Title Insurance* (1990) 225 Cal.App.3d 422, 428, fn. 2.) Although the court denied summary adjudication of the MHA claims when it concluded that the Park Model was not a manufactured home, the court did not enter final judgment against Wilson on those two claims (or on any others). As a result, Wilson could not have appealed from the order denying summary adjudication, and she may challenge the court's holding about the Park Model's status in an appeal from the judgment, as amended.

We review de novo the trial court's denial of Wilson's motion for summary adjudication. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.) Even if the court erred in denying summary adjudication, however, "that error cannot result in reversal of the

5

final judgment unless that error resulted in prejudice to" the moving party. (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833.) Under this standard, the judgment is not disturbed unless "the appellant can show resulting prejudice, and the probability of a more favorable outcome, *at trial*. . . . [E]rror may lead to reversal only if we are persuaded 'upon an examination of the entire cause' that there has been a miscarriage of justice." (*Ibid.*, italics in original; accord *Buckner v. Milwaukee Electric Tool Corp.* (2013) 222 Cal.App.4th 522, 539.)

Although we conclude that Wilson's challenge is properly raised, we need not and do not resolve on the merits her claim that the Park Model is a " 'manufactured home' " under section 18007. We need not resolve this issue to decide the cause of action for improper escrow because the trial court gave an alternative reason for rejecting the claim. It is true that the court first held that Wilson had no claim for improper escrow under section 18035 because the Park Model was not a manufactured home or a mobilehome. (See § 18035, subd. (a) [escrow only required for transactions involving "new or used manufactured home or mobilehome subject to registration under this part"].) But the court also held that Howard was not a "dealer" who was required to establish escrow under the statute. (See § 18035, subd. (a) [escrow only required for transactions "by or through a dealer"].) Since Wilson has not challenged the latter holding, we must affirm the resolution of the improper-escrow claim against her on that basis.

We also need not resolve the issue as to the claims for fraud and failure to provide disclosures because, even assuming the Park Model is a recreational vehicle (as Wilson concedes) and also a manufactured home (as she contends), Wilson has not demonstrated any prejudice from the trial court's order denying summary adjudication. Our determination that no prejudice was shown turns on the effect of the court's granting nonsuit on the fraud claim.[4] This ruling established that there were no actionable nondisclosures about permitting issues stemming from the Park Model's status as a

---

[4] We requested and received supplemental briefing on this issue under Government Code section 68081.

6

recreational vehicle, but it did not establish whether there were actionable nondisclosures about permitting issues related to manufactured homes because the court had already determined that the Park Model was not one.  Still, even though the ruling granting nonsuit did not address permitting issues related to the Park Model's arguable status as a manufactured home, Wilson has not convinced us that there were such issues.

Wilson's first argument is based on section 18613, subdivision (a)(1), which requires a permit "each time a manufactured home . . . is to be located, installed, or reinstalled, on any site for the purpose of human habitation or occupancy as a dwelling." But section 18613 also provides that it "does not apply to recreational vehicles or commercial coaches."  (§ 18613, subd. (g).)  Assuming that Wilson is correct that a dwelling can be both a manufactured home and a recreational vehicle, we must examine whether subdivision (a) or subdivision (g) controls whether a permit was required to install the Park Model.

" 'It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former.  A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577.)  When two statutory provisions "can be reconciled, they must be construed 'in reference to each other, so as to "harmonize the two in such a way that no part of either becomes surplusage." ' " (*Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1118, quoting *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 778-779.)  We can harmonize subdivisions (a) and (g) of section 18613 if we interpret them to mean that a permit is required to install a manufactured home unless it is also a recreational vehicle.  In contrast, were we to agree that a permit is required merely because the Park Model is a manufactured home, then subdivision (g)'s exemption for recreational vehicles would be rendered surplusage.  We conclude that, regardless whether the Park Model is a manufactured home, its conceded

7

status as a recreational vehicle means that section 18613 did not require a permit for its installation.

Wilson's second argument about permitting issues related to the Park Model's arguable status as a manufactured home is that under section 18500 a "use permit" was required for the space the Park Model occupied. Among other things, that statute requires a permit to construct or alter "lots" in a mobilehome park and to occupy or rent "lots" that have been constructed or altered without a permit.[5] (§ 18500, subds. (b), (c); see § 18214.1.) Although the record does not reveal the trial court's reasoning in granting the motion for nonsuit on the fraud claim, Wilson represents that the court concluded that even though the space was not properly permitted when she bought the Park Model, defendants' "belief that the non-conforming land use for a 'recreational vehicle' . . . was 'grandfathered in' " defeated the fraud claim. (Underlining omitted.) If it is true that the court concluded that defendants had such a belief, as Wilson claims, we do not perceive how section 18500 gives rise to a permitting issue that the court could have found actionable. Wilson cites no authority to establish that a manufactured home, much less one that is also a recreational vehicle, could not lawfully be placed in a space whose use for recreational vehicles was not a circumstance defendants were required to disclose. As a result, she has not provided any basis for us to conclude that the disposition of the causes of action for fraud and failure to provide disclosures would have been more favorable had the court ruled that the Park Model was also a manufactured home.

---

[5] " 'Lot' " is defined as "any area or tract of land or portion of a mobilehome park designated or used for the occupancy of one manufactured home, mobilehome, or recreational vehicle." (§ 18210.)

*C.*     *The Trial Court Did Not Abuse Its Discretion in Denying Wilson's Motion to Reopen Her Case.*

Wilson also contends that the trial court erred by denying her motion to reopen her case to introduce James McCleary's testimony.[6]  A motion to reopen the case to take further evidence is "entrusted to a trial court's considerable discretion," and the court's ruling is reviewed for abuse of discretion.  (*Broden v. Marin Humane Society* (1999) 70 Cal.App.4th 1212, 1222.)  In applying this standard, we determine "whether the trial court's decision exceeded the bounds of reason."  (*Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 208-209.)  "[D]enial of a motion to reopen will be upheld if the moving party fails to show diligence or that [she was] misled by the other party." (*Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 428; see also *Monroy v. City of Los Angeles* (2008) 164 Cal.App.4th 248, 265; 7 Witkin, Cal. Procedure (5th ed. 2008) Trial, § 166, p. 202.)

After the trial court granted defendants' motion for nonsuit on the fraud cause of action, and after Wilson's motion for reconsideration of this ruling was denied, Wilson moved to reopen her case to present the testimony of McCleary, who previously worked as a building inspector for Mendocino County.  During the trial, Wilson had been permitted to present the testimony of a current Mendocino County building inspector, who brought with him Mendocino County's records about the site she had leased.  This testimony had been insufficient to prove that defendants knew of permitting problems (stemming from the Park Model's status as a recreational vehicle) that they were required to disclose when Wilson bought the Park Model.  In moving to reopen the case, Wilson's counsel claimed that she learned McCleary had retired when she contacted Mendocino

---

[6] Wilson's notice of appeal states that she appealed from the trial court's order denying her motion for reconsideration of the order denying her motion to reopen her case, which is not an appealable order.  (Code Civ. Proc., § 1008, subd. (g).)  After defendants moved to dismiss the appeal, we ruled that we would construe her appeal as being from the order denying her motion to reopen the trial, which is reviewable in an appeal from the judgment.  (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18.)

County, 12 days before the trial started, in an attempt to subpoena him. Counsel apparently did not start trying to locate McCleary until the day before the trial started, however, and she only succeeded in speaking to him four days *after* the court granted the motion for nonsuit on the fraud claim. Counsel claimed that when she finally spoke with McCleary she was told that the file brought to trial by the current building inspector was incomplete and should have contained notes that would have established that Howard knew about permitting problems two months before Wilson bought the Park Model. The court denied Wilson's motion to reopen on the basis that Wilson (through her attorney) had not been sufficiently diligent in attempting to locate McCleary.

We cannot conclude on this record that the trial court abused its discretion by denying Wilson's motion. The court found that Wilson's counsel had subpoenaed McCleary for a previously scheduled trial date seven months earlier, but there is no indication that counsel attempted to speak to him then or at any time before the actual trial. The failure to make a serious effort to locate Wilson until the day before trial started and the delay in contacting him until four days after the motion for nonsuit was granted were sufficient justifications for the trial court to refuse to allow Wilson to reopen her case.

D.    *The Trial Court Properly Awarded Costs and Attorney Fees Under the MRL to Defendants and Properly Denied Them to Wilson.*

Finally, Wilson argues that the trial court erred by awarding costs and attorney fees to defendants under Civil Code section 798.85 (section 798.85). She contends that costs and attorney fees should have been awarded to her instead because she obtained a preliminary injunction preventing the defendants from auctioning the Park Model. We disagree with both contentions.

Under section 798.85, the "prevailing party" in "any action arising out of" the MRL "shall be entitled to reasonable attorney's fees and costs. A party shall be deemed a prevailing party . . . if the judgment is rendered in his or her favor or where the litigation is dismissed in his or her favor prior to or during the trial, unless the parties otherwise agree in [a] settlement or compromise." An action arises out of the MRL if it "directly

10

involve[s] the application of MRL provisions in specific factual contexts addressed by the MRL," such as disputes between mobilehome-park residents and management. (*MHC Financing Limited Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1398 (*MHC*).)

Although " '[a]n order granting or denying an award of attorney fees is generally reviewed under an abuse of discretion standard of review,' " the issue " 'whether the criteria for an award of attorney fees and costs [under section 798.85] have been met' . . . is a question of law subject to de novo review." (*MHC*, *supra*, 125 Cal.App.4th at p. 1397.) Because Wilson's only arguments are that defendants failed to meet the criteria for an award under the MRL and that she did meet those criteria, our review is therefore de novo.

> 1. The trial court properly awarded costs and attorney fees to defendants because they were the prevailing parties on at least two causes of action "arising under" the MRL.

Wilson contends that the trial court erred by awarding costs and attorney fees to defendants because only the causes of action for injunctive relief and reduction in services arose under the MRL, and defendants were not the prevailing parties on either claim. But she does not argue that fees should be allocated should we find that costs and attorney fees were properly awarded as to some causes of action but not others. (See *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 555-556 ["a court may not award fees for legal work that is unrelated to a cause of action for which fees are authorized"]; but see also *Del Cerro Mobile Estates v. Proffer* (2001) 87 Cal.App.4th 943, 945, 951 [where all causes of action "ar[i]se from a common core of operative facts," a trial "court [is] not required to apportion the attorney fees incurred . . . between those causes of action"].) Because Wilson has waived the argument that the trial court's award should be allocated, we may affirm as long as defendants were entitled to costs and attorney fees on *any* cause of action. (See *Ritter & Ritter, Inc. Pension & Profit Plan v. The Churchill Condominium Assn.* (2008) 166 Cal.App.4th 103, 128-129

11

[appellants waived challenge to trial court's failure to allocate attorney fees by not raising issue in opening brief].)

We conclude that the trial court's award was proper at least as to the causes of action for abuse of process and reduction of services. First, both causes of action "arose under" the MRL within the meaning of section 798.85. Wilson concedes this about the reduction-in-services claim. As to the abuse-of-process claim, it was based on the allegation that "[d]efendants misused the judicial process by which abandoned personal property is sold by public auction, in that they [were] attempting to sell [Wilson]'s mobilehome without applying the protections provided by the [MRL]." While Wilson argues that abuse of process is "a tort action which [is] separate and distinct from an action arising from the [MRL]," the fact that the action was not specifically brought under the MRL is not determinative. (See *Palmer v. Agee* (1978) 87 Cal.App.3d 377, 386-387 [unlawful detainer action arose out of MRL because defendants raised defense that relied on application of MRL].) The abuse-of-process claim required Wilson to show that defendants needed to proceed under the MRL, specifically Civil Code section 798.61, in order to auction the Park Model as "abandoned." This claim thus "directly involv[ed] the application of MRL provisions" to a relevant "factual context[]." (*MHC*, *supra*, 125 Cal.App.4th at p. 1398.)

Second, defendants prevailed on both causes of action. Wilson does not claim otherwise as to the abuse-of-process claim, on which the trial court entered judgment in defendants' favor after the claim was fully litigated and tried to a jury. As to the reduction-in-services claim, she argues that defendants were not the prevailing parties because she "never pursued" the claim. But Wilson cites no authority to suggest that her abandonment of the claim prevented defendants from prevailing on it. While she states that defendants "did not identify any attorney's fees expended on the fifth cause of action," she does not explain why this fact is relevant to determining whether defendants were the prevailing parties. We affirm the court's award of costs and fees to defendants because they prevailed on some causes of action arising under the MRL.

12

2.  The trial court properly denied costs and attorney fees to Wilson because she was not the prevailing party on any cause of action.

Wilson argues that she was the prevailing party on the claim for injunctive relief because by obtaining a preliminary injunction, she "achieved her primary goal" of "enjoining PCHDC from selling her [Park Model] at a public auction." Section 798.85 is clear, however, that, absent the parties' agreement otherwise, a party is only considered "prevailing" in one of two situations: "if the judgment is rendered in his or her favor" or if "the litigation is dismissed in his or her favor prior to or during the trial." Wilson does not explain how her obtaining a preliminary injunction through a claim later rendered moot is the equivalent of a judgment or dismissal in her favor. She cites other fee-shifting statutes and cases that interpret them, but those authorities are not applicable to determining what "prevailing party" means under the MRL given its plain language. (See Code Civ. Proc., § 1032, subds. ( a)(4), (b) [providing definition of " '[p]revailing party' " "[e]xcept as otherwise expressly provided by statute"]; *Hensley v. Eckerhart* (1983) 461 U.S. 424, 433 [interpreting "prevailing party" under 42 U.S.C. § 1988]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1285, 1290-1292 [considering entitlement to attorney fees under Code of Civ. Proc., § 1021.5, which applies to private-attorney-general actions]; *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 315, 317-319 [same]; *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 352-353 [same].) Because judgment was not entered in Wilson's favor on any cause of action, we conclude that the trial court correctly denied her cross-motion for costs and attorney fees under the MRL.

### III.
#### DISPOSITION

The judgment is amended to reflect the resolution in defendants' favor of counts one, two, five, six, and seven, all nunc pro tunc as of July 30, 2012. As so amended, the judgment is affirmed. The order awarding and denying costs and attorney fees under the MRL is also affirmed. Defendants are awarded their costs on appeal.

13

_____
Humes, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.

14