Filed 8/21/14  Willow Bend v. City of Holtville CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| WILLOW BEND, LLC, et al., | D062980 |
| Plaintiffs, Cross-Defendants and Appellants, | |
| v. | (Imperial County Super. Ct. No. ECU04728) |
| CITY OF HOLTVILLE, | |
| Defendant, Cross-Complainant and Respondent. | |

APPEALS from a judgment and an order of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Judgment affirmed; order affirmed in part, reversed in part and remanded.

Larry M. Hoffman for Plaintiffs, Cross-Defendants and Appellants.

Walker & Driskill, Steven M. Walker and Martin A. Gonzalez for Defendant, Cross-Complainant and Respondent.

This is a dispute over the operation of a mobile home park in the City of Holtville (the City) on property the City rezoned from residential to commercial.  Willow Bend,

LLC (Willow Bend) and Steve Selinger sued the City for inverse condemnation and common law torts, and the City cross-complained against them and Barton Properties, Inc. (Barton) for declaratory relief and other counts. The trial court granted the City summary judgment on the complaint and after trial on the cross-complaint ruled in favor of the City on its declaratory relief claim.

Willow Bend and Selinger appeal the judgment, contending the grant of the City's summary judgment motion was improper because the City omitted material language from a portion of the ordinance, thereby indicating that all nonconforming uses would automatically expire seven years after the effective date of the ordinance, when actually a nonconforming use could continue if it met certain performance standards for a commercial zone, an issue on which the City presented no evidence. Willow Bend also contends the court erred by limiting the scope of declaratory relief on the City's cross-complaint. Additionally, Willow Bend, Selinger and Barton appeal an order denying their motion for attorney fees for defeating the cross-complaint's causes of action brought under the Mobilehome Residency Law (MRL). (Civ. Code, § 798 et seq.)

We affirm the judgment. We reverse the order insofar as it concerns Barton, and remand the matter for further proceedings on the issue of attorney fees. In all other respects, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Jack M. Petty, Jr., owned a 34-lot mobile home park (the Park) located in the City. In June 2000, the City enacted Ordinance No. 441 to rezone the Park property from R-4, residential, to C-2, general commercial. Petty recalls reading a newspaper article in 2001

2

pertaining to the rezoning. In a June 2006 letter, the City notified Petty that because of the rezoning his right to operate the Park would expire in approximately June 2007. Petty never challenged the rezoning.

In October 2006, Petty sold the Park to Willow Bend, whose owner is Selinger. Before the close of escrow, Petty provided Selinger with copies of the 2001 newspaper article, the City's June 2006 letter, and a real estate statement that disclosed the rezoning.

Willow Bend continued to operate the Park under a permit issued by Imperial County. In a July 2007 letter, the City notified Willow Bend that the Park was a nonconforming use. In 2007 and 2008, the City's fire department sent notices to Willow Bend "concerning the Park's violations of certain codes and ordinances," and notices to the Park's residents stating "the Park had nonconforming status, and that recreational vehicles were not permitted under Ordinance No. 441."

In October 2008, Willow Bend and Selinger sued the City. In May 2009, they filed the operative third amended complaint (TAC), alleging inverse condemnation and various common law torts.[1] In summary, the TAC alleged the City had not identified any rezoning ordinance affecting the Park, and in any event a rezoning was void because the City did not hold a public hearing on the matter in violation of a Government Code provision. Further, the TAC alleged the City damaged Willow Bend by wrongfully

---

[1] The TAC included counts for (1) declaratory relief; (2) injunctive relief; (3) violation of Article 1, section 19 of the California Constitution, pertaining to eminent domain; (4) and (5) violation of the equal protection and due process clauses of the federal and state constitutions (U.S. Const. Amend. 14; Cal. Const., art. 1, § 7); (6) negligence; (7) nuisance; (8) trespass; (9) negligent interference with prospective economic relations; and (10) intentional interference with contractual relations.

3

attempting to close the Park, by threatening residents with fines and imprisonment if they did not move out within 30 days and by inflating the Park's utility bills.

The City cross-complained against Willow Bend, Selinger, and Barton, as another alleged owner of the Park. In January 2010, the City filed the operative second amended cross-complaint (SACC), for nuisance, negligence per se, and declaratory and injunctive relief. The nuisance and negligence per se counts alleged the Park was not properly maintained in violation of statutory regulations. The declaratory relief count identified Ordinance No. 441, and alleged it "required that all non-conforming uses be terminated within seven years of its execution." The City sought a declaration of the parties' respective rights and obligations, and an injunction prohibiting operation of the Park.

In February 2010, the City moved for summary judgment on the TAC, arguing in relevant part that all counts were barred by the 90-day statutes of limitation applicable to a challenge to the enactment of a rezoning ordinance. (Gov. Code, §§ 65009 & 66499.37.) In its memorandum of points and authorities and its separate statement of undisputed facts, the City quoted a provision of Ordinance No. 441, appearing in chapter 17.58, section 17.58.050 of the City's Municipal Code (hereafter section 17.58.050), as follows: "The right to operate and maintain nonconforming uses in industrial and commercial zones shall terminate . . . within seven years of the effective date of the ordinance codified in these regulations." The City argued that under section 17.58.050, the Park automatically "became an *illegal* nonconforming use as of June 12, 2007." (Italics added.)

4

In full, however, section 17.58.050 provides: "The right to operate and maintain nonconforming uses in industrial and commercial zones shall terminate *if the use is not made to comply with the performance standards of that zone* within seven years of the effective date of the ordinance codified in these regulations."[2] (Italics added.) The City did not allege or offer any evidence that the Park had not complied with the performance standards for a commercial zone.

Section 17.58.050 was a public document readily available to Willow Bend and Selinger. In their opposition, however, they did not point out to the court that the City had omitted material language from section 17.58.050, or even cite the section. Rather, they argued Ordinance No. 441 was not effective since the City violated Government Code section 65863.7 by not filing and serving a report on the potential impact of the rezoning or take any steps to mitigate the impact on residents of the Park. Alternatively, Willow Bend and Selinger argued that even assuming Ordinance No. 441 was effective in 2000, the Park could not be designated nonconforming until June 2015.[3] They also

---

[2]    The City's performance standards pertain to electrical disturbances or changes in temperature or glare, incineration and storage of flammable and explosive materials, noise, use of radioactive materials, vibration, outdoor storage, emanation of air contaminants, minimum lot sizes and building heights, and landscaping.

[3]    Willow Bend and Selinger did cite another provision of Ordinance No. 441, found in chapter 17.58, section 17.58.020(A) of the City's Municipal Code, which provides: "Nonconforming uses shall be those uses in any zone that are not provided for in the permitted or conditional uses for each zone. Such uses shall be determined within 15 years of the effective date of the ordinance codified in this chapter, or from the date such uses become nonconforming, whichever is later." The City argued this provision "is inapplicable as it appears to provide a general catch-all 15-year period of operation for nonconforming uses. In contrast, section 17.58.050 provides the specific termination

5

argued the 90-day limitations period did not accrue until the City began sending letters to the tenants of the Park indicating they had to leave, because until that point they suffered no damages.

The court rejected Willow Bend and Selinger's argument on the 90-day issue, noting it "flies directly in the face of the purpose of the statute[s], which [are intended] to lend some finality to these decisions, so that they're not chewed on for years, and years, and years." The court also noted that if a rezoning "negatively affects the property at all, it has caused appreciable harm." The court granted the City summary judgment explaining that even if there were irregularities in the adoption of Ordinance No. 441, the time for challenging it had long expired.

The case proceeded on the City's SACC. On the date scheduled for trial, the City dismissed all causes of action against Selinger and Barton, and the nuisance and negligence per se causes of action against Willow Bend.

The parties submitted the SACC's causes of action for declaratory and injunctive relief on stipulated facts, with Willow Bend conceding Ordinance No. 441 was properly enacted and it rendered the Park a nonconforming use.[4] Willow Bend disputed, however, that the Park was an *illegal* nonconforming use subject to forced closure. Willow Bend argued section 17.58.050 "allows such a nonconforming use to continue indefinitely,

---

period ([seven] years) for all nonconforming uses within industrial and commercial zones."

[4]      In 2009, the City enacted Ordinance No. 469, which rezoned the Park property to DT [downtown]-B, for mixed commercial, retail and residential use, the latter by conditional use permit only. This does not affect our analysis.

6

provided only that it is made to comply with the performance standards of that zone within seven years," and the "City has never alleged, let alone offered evidence to prove, that the Park was not in compliance with these performance standards."

The court issued a tentative decision denying the City any declaratory or injunctive relief. The court explained the City had not proved the Park was an *abatable* nonconforming use, since "section 17.58.050 provides that a nonconforming use may continue beyond [seven] years *if* the use is made to conform to the performance standards of the zone. Here, there is no evidence (i.e., stipulated fact) addressing the issue of whether the mobile[]home park conforms to the performance standards of its zone." Further, the court determined the City did not prove it complied with procedural prerequisites for forcing closure of the Park. To the contrary, the City stipulated it had not filed and served an impact report as required by Government Code section 65863.7.

At the hearing, the City conceded it was not entitled to injunctive relief to close the Park because it offered no proof the Park was not in compliance with performance standards for a commercial zone. In August 2012, the court entered a judgment denying the SACC's prayer for injunctive relief, but granting its prayer for a declaration that the Park was a nonconforming use. The judgment was also for the City on the TAC, and it designated the City the prevailing party in the litigation.

Willow Bend, Selinger and Barton then moved for $298,502.10 in attorney fees under Civil Code section 798.85 for defeating the SACC's causes of action for nuisance and negligence per se, which they argued arose out of the MRL. (Civ. Code, § 798 et

7

seq.) The court denied the motion on the ground the City prevailed in the litigation overall.

DISCUSSION

I

*The City's Motion to Dismiss*

The City urges us to dismiss Willow Bend and Selinger's appeal of the judgment because it was filed more than 60 days after the superior court clerk served the parties with a file-stamped copy of the judgment. The time limit for an appeal is jurisdictional. "We are powerless to extend the time to file a notice of appeal, or to hear untimely appeals." (*In re Marriage of Mosley* (2010) 190 Cal.App.4th 1096, 1101.)

Ordinarily, a notice of appeal must be filed within 60 days after the superior court clerk mails the parties a file-stamped copy of the judgment. (Cal. Rules of Court, rule 8.104(a)(1)(A).)[5] That time is extended, however, when a party "serves and files a *valid* notice of intention to move for a new trial" (*Id.*, 8.108(b)), italics added), until 30 days after the superior court clerk mails an order denying the motion or a notice of entry of an order denying the motion. (*Id.*, 8.108(b)(1)(A).)

Shortly after the court ruled on the City's summary judgment motion, Willow Bend and Selinger moved for a new trial on the TAC. The court denied the motion. More than two years later, after entry of judgment on the TAC, Willow Bend and Selinger filed another motion for a new trial. The court also denied this motion.

---

5      Further rule references are to the California Rules of Court.

8

The City contends the second notice of intention was not a *valid* notice, based on the court's finding it was actually an application for reconsideration of the first motion for a new trial, but it was improper because it did not include an affidavit stating "what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown." (Code Civ. Proc., § 1008, subd. (a).) Alternatively, the court denied the motion for lack of specificity.

We disagree with the court's finding. A notice of intention for a new trial may be filed after entry of judgment, or "[a]fter the decision is rendered and before the entry of judgment." (Code Civ. Proc., § 659, subd. (a)(1), (2).) In the context of a summary judgment motion, a notice of intention is premature if it is filed before entry of an order granting the motion. (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 187, 195; *Collins v. Sutter Memorial Hosp.* (2011) 196 Cal.App.4th 1, 11; 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 56, p. 642 (Witkin).) A premature notice of intention is void, depriving the court of jurisdiction to grant a new trial. (*Id.*, § 57, p. 642.) "The adverse party cannot waive the jurisdictional defect either expressly or by participation in the hearing." (*Ibid.*)

Willow Bend and Selinger's first notice of intention was premature because they filed it before the court entered its order granting the City's motion for summary

9

judgment.[6]  "Although a notice of motion for new trial is improperly premature, . . . a new and proper notice may subsequently be given.  This will be treated as a valid independent motion, and the earlier notice . . . does not constitute a waiver."  (Witkin, *supra,* § 57, p. 643; *Peters v. Anderson* (1931) 113 Cal.App. 158, 160 [second motion for new trial deemed original motion].)  Thus, the second notice of intention was original and extended the time to appeal under rule 8.108(b)(1)(A).

We also reject the City's assertion the second notice of intention was not valid because it did not specify the motion "will be made upon affidavits or the minutes of the court, or both . . . ."  (Code Civ. Proc., § 659, subd. (a).)  The California Supreme Court has rejected the view that noncompliance with this requirement is jurisdictional.  (*Nichols v. Hast* (1965) 62 Cal.2d 598, 600.)  The court explained:  "It is now implicit in the statement of the grounds of the motion whether it will be made upon affidavits or the minutes of the court or both," and "when a notice of motion for a new trial clearly states the grounds on which it will be made, it would be an abuse of discretion to deny the motion solely on the ground that it did not state whether it would 'be made upon affidavits or the minutes of the court or both.' "  (*Id.* at p. 601.)  It is immaterial that Willow Bend and Selinger neglected to support their actual motion with an affidavit, as a

---

[6]    Willow Bend and Selinger's first notice of intention was filed on May 13, 2010, and the court's order granting the City's motion for summary judgment was filed on July 13, 2010.  The court entered a minute order on its ruling on April 26, 2010, but it was not intended to be the court's order.  Rather, the minute order states, "Moving party is to prepare the orders."

10

valid notice of intention extends the appeal time.  (Rule 8.108(b)(1)(A).)  We deny the motion to dismiss.

II

*Summary Judgment on the TAC*

Willow Bend and Selinger concede that the TAC's allegations challenging the validity of Ordinance No. 441 were time-barred.  They contend, however, that summary judgment was improper because the TAC also contained allegations that the City damaged them by wrongfully attempting to shut down the Park, and those allegations are unrelated to the effectiveness of the rezoning.  They assert the City prevailed on those claims by omitting material language from section 17.58.050 and misleading the court into believing all nonconforming uses automatically became illegal seven years after the rezoning, when the full text of the section shows such uses could continue if they complied with the performance standards of a commercial zone.

A defendant moving for summary judgment "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  If the defendant "carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*)  "On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

11

Willow Bend and Selinger do not show the court's ruling was erroneous based on the evidence the parties presented *during the motion*. The City's selective quotation of section 17.58.050 indicated that all uses made nonconforming by Ordinance No. 441 would automatically terminate within seven years of the ordinance's effective date. The court could not be expected to question the City's use of an ellipsis in quoting section 17.58.050. In opposing the motion, it was incumbent on Willow Bend and Selinger to protect their rights, but they did not even cite section 17.58.050. In their second motion for a new trial, they stated it "did not occur" to their attorney that the City had omitted material language. They concede the court was not provided with the full text of section 17.58.050 for approximately two years, until trial on the SACC.[7]

---

[7] At oral argument, the City asserted the TAC allegations pertained only to the validity of its enactment of Ordinance No. 441, and its summary judgment motion was directed exclusively to the 90-day statutes of limitation period for a challenge to a rezoning ordinance. The City asserted its motion did not pertain to section 17.58.050, or the seven-year issue, and thus its omission of critical language from section 17.58.050 in its motion was immaterial.

The record, however, does not support the City's position. The TAC included general allegations, incorporated into each of the 10 causes of action, that the plaintiffs were damaged by the City's wrongful attempt to close the Park based on a "seven-year 'sunset provision' " included in a "modification of its general plan . . . adopted in or about June 2000." The TAC also alleged that in a July 2008 letter, the City advised Selinger the Park was a "legal non-conforming use through June, 2007," but it was "now in a zone where mobile home parks are prohibited." The nuisance cause of action alleged that in July 2008 the City "began [its] campaign of harassment aimed at Plaintiffs, in which [it] repeatedly attempted to force closure of the Park without any legal support," and sent letters to residents of the Park "demanding that [they] vacate, thereby threatening Plaintiffs' ability to collect rent and protect their income flow." To prevail on summary judgment, the City was required to produce evidence showing its alleged conduct was not wrongful as a matter of law, an issue separate from the 90-day statutes of limitation period applicable to the TAC allegations challenging the validity of the rezoning ordinance. In its separate statement, the City partially quoted section 17.58.050 to show

12

Since the court did not err by granting summary judgment, Willow Bend and Selinger cannot obtain appellate relief absent a successful challenge of the court's denial of their motion for a new trial. "[N]ew trial motions are creatures of statute, ' "the procedural steps . . . for making and determining such a motion are mandatory and must be strictly followed [citations]." ' " (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1193.) The denial of a motion for a new trial is cognizable on appeal of the underlying judgment. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18.)

Willow Bend and Selinger, however, do not challenge the court's ruling on their new trial motion. Accordingly, they have forfeited appellate review of the matter. " ' "Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived." ' " (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685.) "The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment. It is entitled to the assistance of counsel." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, p. 769.)

III

*Declaratory Relief on the SACC*

Additionally, Willow Bend contends the court abused its discretion by limiting the scope of the City's declaratory relief on the SACC. A declaratory relief action may be

---

it was an undisputed material fact that nonconforming uses automatically terminated within seven years of the ordinance's effective date. The trial court presumably relied on the City's selective citation of 17.58.050 in finding its alleged conduct was not actionable.

13

brought in cases of "actual controversy relating to the legal rights and duties of the respective parties." (Code Civ. Proc., § 1060.) "One purpose of declaratory relief is ' " 'to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation.' " ' [Citation.] ' " 'One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights.' " ' " (*American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 741-742.)

" 'Whether a claim presents an "actual controversy" within the meaning of Code of Civil Procedure section 1060 is a question of law that we review de novo.' [Citation.] When an actual controversy does exist, Code of Civil Procedure section 1061 gives the trial court discretion to determine whether it is 'necessary' and 'proper' to exercise the power to provide declaratory relief. (Code Civ. Proc., § 1061.) A trial court's decision to exercise that power is reviewed under an abuse of discretion standard of review." (*American Meat Institute v. Leeman, supra,* 180 Cal.App.4th at p. 741.)

Willow Bend asserts that in addition to declaring the Park a nonconforming use under Ordinance No. 441, the court should have determined whether section 17.58.050 automatically made any nonconforming use *illegal* seven years after the ordinance's effective date, or whether a nonconforming use was *legal* if within the seven years it complied with performance standards.

14

We find no error or abuse of discretion.  By the time of trial, there was no controversy on the meaning of section 17.58.050.[8]  Rather, the City conceded section 17.58.050 did not automatically make the Park an *illegal* nonconforming use, and the City was not entitled to injunctive relief because it provided no proof the Park had not complied with performance standards.  Willow Bend asserts the court should have determined whether the Park was a legal or illegal nonconforming use, but such a declaration would have been improper.  As the court explained, "I have insufficient evidence to resolve that issue because I don't have any evidence on the performance."

IV

*Attorney Fees*

A

Finally, Willow Bend, Selinger and Barton contend the court erred by denying their motion for attorney fees based on the City's dismissal of the SACC's causes of action for nuisance and negligence per se, which they argued arose out of the MRL.  We disagree as to Willow Bend and Selinger, but agree as to Barton.

" 'In California, mobile[]home tenancies are governed by the [MRL].  (Civ. Code, § 798 et seq.)  The law "extensively regulates the landlord-tenant relationship between mobile[]home park owners and residents."  [Citation.]  [¶] The protections afforded by the [MRL] reflect legislative recognition of the unique nature of mobile[]home tenancies.

---

[8]     We also note there was no controversy at trial as to whether the Park was a nonconforming use under Ordinance No. 441.  It is unclear why trial on the SACC was necessary.

15

[Citation.] Ordinarily, mobile[]home park tenants own their homes but rent the spaces they occupy. [Citation.] Once a mobile[]home is in place in a park, it is difficult to relocate. [Citations.] Its owner thus "is more likely to be a long-term resident." [Citation.] In many cases, mobile[]home park tenants have limited and undesirable options if they find "living in the park no longer desirable, practical, or possible. . . ." [Citation.]' [Citation.] The MRL provides 'homeowners a measure of stability and predictability in their mobile[]home park residency. . . .' " (*SC Manufactured Homes, Inc. v. Canyon View Estates, Inc.* (2007) 148 Cal.App.4th 663, 673.)

The MRL's attorney fees statute provides: "In any action arising out of the provisions of this chapter the prevailing party shall be entitled to reasonable attorney's fees and costs. A party shall be deemed a prevailing party for the purposes of this section if the *judgment* is rendered in his or her favor or where the *litigation* is dismissed in his or her favor prior to or during the trial, unless the parties otherwise agree in the settlement or compromise." (Civ. Code, § 798.85, italics added.) Although " '[a]n order granting or denying an award of attorney fees is generally reviewed under an abuse of discretion standard of review,' " the issue " ' "whether the criteria for an award of attorney fees and costs [under Civil Code, section 798.85] have been met' " . . . is a question of law subject to de novo review." (*MHC Financing Limited Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1397 (*MHC Financing Limited Partnership Two*).)

" 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' " (*Realmuto v. Gagnard* (2003) 110 Cal.App.4th 193, 199.) "The words of the statute are the starting point. 'Words used

16

in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia or the intent of the Legislature . . . .' [Citation.] If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977, 978.)

The court found Civil Code section 798.85 unambiguously prohibited an award of attorney fees. The court reasoned that the terms "judgment" and "litigation" show the Legislature intended to allow fees only when the requesting party prevailed on "all of a lawsuit," rather than merely on one or more MRL causes of action within a lawsuit.

We agree that Civil Code section 798.85 cannot reasonably be interpreted to mean that a party who prevails only on an MRL cause of action, but loses the overall litigation and suffers an adverse judgment, is a "prevailing party" entitled to fees. The term "Litigation" is defined as: "A lawsuit. Legal action, including all proceedings therein." (Black's Law Dict. (5th ed. 1979) p. 841, col. 2.) The term "Judgment" is defined as: "The official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination. . . . The law's last word in a judicial controversy, it being the final determination by a court of the rights of the parties upon matters submitted to it in an action or proceeding." (*Id.* at p. 755, cols. 1-2.)

17

Moreover, there is but one "judgment" in a particular litigation. (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1107.) "The one final judgment rule does not permit parties 'to separate [their] causes of action into two compartments for separate appellate treatment at different points in time.' " (*Ibid.*) Had the Legislature intended that Civil Code section 798.85 authorize attorney fees for prevailing on only the MRL portion of litigation, it could easily have said so.[9] We conclude the statute precludes an award of fees to Willow Bend and Selinger.

B

1

Barton's situation is different, however, because it was not a party to the TAC and the City dismissed it from every count in the SACC, after stipulating its "only involvement . . . is as some sort of management group." Thus, the *litigation* was dismissed in its favor within the meaning of Civil Code section 798.85.

The City contends attorney fees are nonetheless unavailable because none of the causes of action in the SACC arose out of the MRL. The trial court determined "there is no doubt that the cross-complaint did arise -- or at least certain claims in it did arise out of [the MRL]," and we agree.

"To be entitled to attorney fees and costs pursuant to [Civil Code] Section 798.85, the underlying case must arise in the context of those relationships and claims addressed

---

9       For instance, California's Eminent Domain Law (Code Civ. Proc., § 1230.010 et seq.) provides for attorney fees when "[t]he proceeding is wholly *or partially* dismissed for any reason." (*Id.*, §§ 1268.610, subd. (a)(1), italics added, 1235.140.)

18

by the MRL.  It is not sufficient that the case 'relates to' the MRL." (*SC Manufactured Homes, Inc. v. Canyon View Estates, Inc., supra,* 148 Cal.App.4th at p. 675.)  "In various contexts, courts have construed the phrases 'arising out of' and 'arising under' more narrowly than the phrase 'relating to.' " (*MHC Financing Limited Partnership Two, supra,* 125 Cal.App.4th at p. 1398.)  "[T]he phrase 'any action arising out of the provisions of [the MRL]' in Civil Code section 798.85 encompasses only those actions directly involving the application of MRL provisions in specific factual contexts addressed by the MRL, such as actions by mobile[]home park residents against management for failing to maintain physical improvements in common facilities in good working order." (*Ibid.*)  "A case may 'arise' under the MRL even if a complaint does not allege a specific cause of action under the MRL, as long as the dispute is one within the scope of the MRL." (*SC Manufactured Homes, Inc.,* at p. 676.)

The SACC belies the City's assertion its single goal in filing a cross-complaint was "to preserve the validity of the zoning ordinance."  The nuisance cause of action alleged the cross-defendants were "legally responsible for compliance with the provisions of . . . Civil Code section[] 798," and they "created and maintained a public nuisance at common law and under Civil Code section[] 798.87."  Further, the nuisance cause of action alleged a variety of conditions deleterious to residents of the Park, including inadequate sewer, drainage, electrical, natural gas and plumbing systems; lack of pest and rodent control; unmaintained trash areas; inadequate outdoor lighting; and insufficient parking.  The lack of maintenance caused residents to suffer "emotional distress, illness, personal injury, medical expenses, caretaking costs, property damages, cost of repairs,

19

loss of wages, loss of use and enjoyment of their homes, and diminution in value of their homes . . . ."

The negligence per se cause of action incorporated allegations that all cross-defendants were "legally responsible for compliance with the provisions of . . . Civil Code section[] 798," and they "created and maintained a public nuisance at common law and under Civil Code section[] 798.87." Further, the negligence per se cause of action alleged the violation of numerous regulations pertaining to mobile home parks. For example, it alleged cross-defendants "breached Health and Safety Code section 18554 on numerous occasions by permitting raw sewage from the sewer system and common facilities in [the Park] to spill and seep to the surface"; "breached Health and Safety Code section 18670 by failing to provide wiring and fixtures in [the Park] adequate to accommodate the normal demand for electricity"; "breached Title 25 of the California Code of Regulations, section[] 1108 . . ., by failing to install and maintain adequate artificial lighting in [the Park]"; and "breached Title 25 of the California Code of Regulations, section 1220, by failing to have gas shutoff valves on mobile[]home lots."

The negligence per se cause of action also alleged that because of the lack of maintenance, the City suffered damages, including "costs associated with the cleanup of sewer spills and the abatement of weeds, trash, tires, and other nuisances. The nuisance abatement program, implemented by [the City's] fire department staff, is particularly arduous and requires many man hours noticing/inspecting/re-inspecting/noticing the [P]ark owner." Further, it alleged cross-defendants "must immediately abate or cause to be abated all nuisances alleged herein." The SACC set forth one prayer for both the

20

nuisance and negligence per se causes of action, for civil penalties and "a permanent injunction requiring Cross-defendants to repair the Park's sewer, water, gas, drainage, lighting, streets, and electrical systems, trees and landscaping, abate any other nuisances alleged herein, comply with codes, statutes, and ordinances."[10]

In support of the attorney fees request, Barton submitted the declaration of one of its attorneys. It stated that to defend against the nuisance and negligence per se claims, he and others from his firm were required to undertake numerous tasks, including "assembling close to [200] exhibits and preparing for the testimony of approximately [20] witnesses, as well as taking and defending depositions and reviewing voluminous documents from my client and County and City employees, . . . inspecting the [P]ark and interviewing witnesses." The declaration also states that the attorney tried to settle the claims numerous times, since repairs were made to the Park and "no nuisance appeared to exist." The City, however, refused to dismiss Barton until the date trial was scheduled.

We conclude the SACC's claims for nuisance and negligence per se arose out of the MRL because they involved "application of MRL provisions to a particular factual context addressed by the MRL." (*MHC Financing Limited Partnership Two, supra,* 125 Cal.App.4th at p. 1398.) They were "based upon the management's alleged failure to maintain the physical improvements in the common facilities in good working

---

[10] The nuisance cause of action does not allege any facts pertaining to preserving the validity of the rezoning ordinance. The negligence per se cause of action mentions Ordinance No. 441 only insofar as it alleges its adoption and that supposedly "the right to operate and maintain nonconforming uses in the industrial and commercial zones was to terminate in seven years."

order . . . ." (Civ. Code, § 798.84, subd. (a).) "The substantial failure of the management to provide and maintain physical improvements in the common facilities in good working order and condition shall be deemed a public nuisance." (Civ. Code, § 798.87, subd. (a).) A civil action to remedy a nuisance may be brought by a park resident, the people of the State of California, the Attorney General, or, as here, a city attorney. (Civ. Code, § 798.87, subd. (c).) We reverse the order denying attorney fees insofar as Barton is concerned and remand the matter to the trial court for further proceedings on the matter.[11]

2

In its opposition to the fee motion, the City argued that even if some fees were available under the MRL, the fee request was unreasonable because there was a lack of allocation among the SACC's compensable (nuisance and negligence per se) and noncompensable (declaratory and injunctive relief) causes of action. "Where fees are authorized for some causes of action in a complaint but not for others, allocation is a matter within the court's discretion." (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 555.) "[A]llocation is not required when the

---

[11] Without citing any authority, the City suggests that because Willow Bend is not entitled to attorney fees under Civil Code section 798.85, since it did not prevail in the litigation overall, Barton is not entitled to attorney fees because it "is one of the owners of Willow Bend." The City cites the trial brief of Willow Bend, Selinger and Barton, which states Barton "is a separate corporation with a 50[ percent] interest in [Willow Bend]." " 'The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

issues are 'so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not.' " (*Ibid.*)

Further, the fee motion did not allocate fees among Willow Bend, Selinger and Barton, who were represented by the same counsel, presumably because they believed they were all entitled to fees under their interpretation of Civil Code section 798.85. "Allocation also generally is required when the same lawyer represents one party that is entitled to recover its attorney fees and another party that is not. As with allocation among causes of action, allocation among jointly represented parties 'is not required when the liability of the parties is "so factually interrelated that it would have been impossible to separate the activities . . . into compensable and noncompensable time units. . . ." ' " (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 830.)

Accordingly, on remand the trial court must determine (1) whether and how to allocate Barton's attorney fees between the SACC's compensable and noncompensable causes of action; (2) whether and how to allocate fees among the cross-defendants; and (3) the amount of attorney fees Barton may recover for this appeal. " 'Although this court has the power to fix [the amount of] attorney fees on appeal, the better practice is to have the trial court determine such fees.' " (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1267.)

## DISPOSITION

The judgment is affirmed. The order denying attorney fees is reversed insofar as Barton is concerned, and the matter is remanded to the trial court for further proceedings in accordance with this opinion. The order is affirmed in all other respects. In light of

the mixed results here, the parties shall bear their own costs on appeal.  (Rule 8.278(a)(5).)

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

McINTYRE, J.